UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------

SHAKUR YOUNG

                    V

THE CITY OF NEW YORK, WARDEN PRESSLEY
R.N.D.C., NYECDOC OFFICER CIELTO #3731,
NEW YOK CITY DEPARTMENT OF CORRECTIONS,
NEW YORK CITY HEALTH AND HOSPITALS
------------------------------------------

# 18CV3316

1. This is a Civil Rights Lawsuit brought by the plaintiff against New York City officals acting under the "Color Of Law" for the Civil Rights violation involving **Excessive Force**, 42 U.S.C. § 1997 Civil Rights of Institutional Person Act, **Violations of the Universal Declaration of the Human Rights Article 18, 19 & 25** and violation of the **Eight Amendment** as well as State claims for **Medical Malpractice, Gross Negligence, Denial of Immediate Medical Attention and Retaliation** for filing grievance and lawsuits. At all times relevant herein, the **Defendants** City officals actions **"Under The Color Of Law"** and outside the scope of their jurisdiction and authority pursuant to Customs and Policy willfully caused Plaintiff unlawful damage and in so doing violated clearly, established law, as those laws apply to Plaintiff protected under the Constitution particularly under **Eight** and **Fourteenth Amendments.** Be it known each of the **City Officals** herein have taken a sworn **"Oath of Office"** on regards to their duties and there for each of their acts under **"Color Of state Law"** is in direct violation of their Oath Of Office and equates to Criminal Conspiracy under section **1985.**

## JURISDICTION AND VENUE

2. The Plaintiff brings this action pursuant to Section **1983, 1985**

(2)

1986 and 1988 and invokes the jurisdiction of this court pursuant to Title 8 use section 1331, 1332 and 1343(a)(3)(4), and 42 U.S.C.A. § 1983, and the Civil Rights Act 1964 and Constitution of the United States. At all times relevant, all of the Cause of Action were committed within the geographical jurisdiction of the court.

3. The plaintiff also invokes supplemental jurisdiction of this court over plaintiff state law claims against the defendant's for common-law violations pursuant to 28 U.S.C.A. § 1367.

PARTIES

4. The plaintiff SHAKUR YOUNG, is a pretrial detainee at the time of these events at the ROBERT N. DAVORAN CENTER, 11-11 Hazen Street., East Elmhurst, New York 11370. Riker's Island.

5. The defendant THE CITY OF NEW YORK, 100 Church Street, New York, NY 10007-2601. Herein the City of New York at all times relevant to this complaint, was and is a municipal corporation for the City of New York , State of New York, responsible for compensating, enriching and rewarding and making policies for the defendant's Warden Pressley R.N.D.C., NYCDOC officer Cielto Shield N. 3731, New York City Department of Corrections, New York City Health and Hospitals.

6. The defendant Warden PRESSLEY, ROBERT N. DAVORAN CENTER, 11-11 Hazen Street, East Elmhurts, New York 11370. Riker's Island. At all times relevant to this complaint, was acting as a City official employed for the municipality of the City of New York Department of Corrections, compensated, enriched, rewarded correctional officer in charge of the R.N.D.C. facility on Riker's Island.

7. The defendant NYCDOC Officer CIELTO Shield No. 3731. At all times

( 3 )

relevant to this complaint was acting as a city official employed at New York City Department of Corrections at the ROBERT N. DAVORAN CENTER, 11-11 Hazen Street, East Elmhurst, New York 11370. Riker's Island. Officer Cielto is being sued individually and in his own capacity.

8. The Defendant NEW YORK CITY DEPARTMENT OF CORRECTIONS, 75-20 Astoria Boulevard, East Elmhurst, New York 11370. Herein at all times relevant to this complaint, was and is a municipal corporation for the City of New York. Responsible for the care, custody and control at all detention centers located on Riker's Island. Also in charge of enforcing policies, directives as well.

9. The Defendant NYC HEALTH AND HOSPITALS, 125 Worth Street, Suite 510 , New York, NY 10013. is a City of New York municipality corporation which are health care and medical providers responsible for overseeing the delivery of medical services at all detention centers located on Riker's Island.

## FACTS

10. On 18th Day of September, 2017, at around 10:30am the Plaintiff Shakur Young, was in the detainees bathroom in Mod #2 in the R.N.D.C., facility on Riker's Island and a altercation occurred between two detainees. Plaintiff tried to stop the altercation between the two detainees and all of a sudden NYCDOC officers Cielto Shield No. #3731, came running into the bathroom and sprayed the chemical agent O.C., on the plaintiff and the two detainees whom was involed in the altercation. The Plaintiff immediately began to feel a burning sensation on his face, eyes and neck area. The plaintiff also began to

(4)

choke, vomit and had difficulty breathing.

11. As the plaintiff exited the bathroom area Captain **Andjelovic Shield No. #1750**, was standing there and the plaintiff complained to captain Andjelovic #1750, that he was in need of immediate medical attention because of being sprayed with the chemical agent O.C., by NYCDOC officer Cielto #3731.

12. Captain Andjelovic #1750, could clearly see that the plaintiff was in pain and had difficulty breathing.

13. Captain Andjelovic #1750, said in a angry profanity laced words to the plaintiff to go sit on his fucking bunk now!.

14. The plaintiff tried to comply with captain Andjelovic #1750, order and went to his bed area, but the plaintiff could not remain there because of the intense burning sensation that he was feeling on his face, neck and eye area and the fact that the plaintiff began to vomit alot by now and still had difficulty breathing.

15. The plaintiff the got up from his bed and ran to the nearest garbage can which was the one located by the inmate phones in front of the bathroom.

16. Captain Andjelovic #1750, then ordered another officer to have all the detainees inside of Mod #2 housing unit to be place inside of the dayroom until further notice.

17. The plaintiff exiting the bathroom after being sprayed with the chemical agent O.C., and the entire conversation between the plaintiff and captain Andjelovic #1750, and the plaintiff vomiting can be seened from the video camara facing the bathroom and the dorm area camara.

18. While in the dayroom the plaintiff still experiencing the intense

burning sensation on his skin, difficulty breathing and still vomiting alot. The plaintiff could be seened trying to get fresh air from the windows in the dayroom that only open partially and all of this can be viewed on the two video camaras located in the dayroom in Mod #2.

19. Then shortly afterwards another NYCDOC officer came to the dayroom and made a annoucement for the lunch time feeding and that all detainees must now exit the dayroom and leave Mod #2 housing unit to go to the messhall downstairs to eat.

20. The plaintiff refused to go to the messhall to eat because he was in serious need of medical attention.

21. The plaintiff exited the dayroom and went to his bed area to get a towel and hygiene equiptment to take a shower because of the intense burning sensation he was still experiencing.

23. Nobody informed the Plaintiff that he must take a cool shower in order to have the chemical agent O.C., washed off his skin because the shower water in Mod #2 housing unit is hot.

24. When the plaintiff turn shower water on and the hot water hit the affected areas that was sprayed with by the chemical agent O.C., it made matters worse and the hot water made the chemical that was on my skin to feel even hotter and the plaintiff and to turn the water off immediately.

25. The plaintiff then then got back dress with the same contaminated clothing from the chemical agent O.C., and when he exited the bathroom area NYCDOC officer Cielto #3731, came inside the mod #2 housing unit and approached the plaintiff and said to him to exit the housing unit and go to the messhall to eat and the plaintiff then shouted at

NYCDOC officer Cielto #3731, and said that he needs medical attention
, and for him to please contact the clinic.

26. NYCDOC officer Cielto #3731, seemed hesitant about making the call
to the clinic with hopes that the plaintiff would abandon his request
to go to medical for injuries sustained due to being sprayed directly
with the chemical agent O.C.

27. The plaintiff then exited Mod #2 housing unit and sat down on a
chair directly in front of Mod #2 housing unit control bubble and
demanded to the officer who was in the bubble to contact the clinic.

28. About fifthteen minutes later NYCDOC officer Cielto exited Mod #2
housing unit and said to the plaintiff that he would be escourting him
to the clinic.

29. When injuries are claimed by the plaintiff especially when the use
of excessive force through the chemical agent O.C., the plaintiff
should have received prompt medical attention/care. There should be no
delay in this process. Delays in sending detainee(s) to the clinic in
the R.N.D.C. facility are so common when excessive force through
correction officer misconduct because correction officers fear of being
sued by detainee(s). Deliberate indifference to serious medical needs
of prisoner/detainee(s) violates the right to due process of law. The
defendants NYCDOC officer Cielto, Captain Andjelovic #1750 were aware
of the fact that the plaintiff was seriously in need of medical attent-
ion, and failed to provide prompt access to medical personel or intent-
ionally delayed such access.

30. The plaintiff was finally escourted to the clinic in Robert N.
Davoran facility. On the way there NYCDOC officer Cielto #3731, tried
to talk to the plaintiff about what happened, and the plaintiff said

to NYDOC officer CIELTO #3731, that he had no right to spray me with
the chemical agent O.C.. That the plaintiff was not involved in the
altercation, that the plaintiff was not armed with any kind of weapon
nor was the plaintiff a threat to NYCDOC officers, staff or detainees.
NYCDOC officer Cielto #3731, gave no warning to the detainees were
involved in the altercation to stop fighting or the use force through
the chemical agent O.C., can and will be used. These are one of the
announcements that must be made before the use of force through the
chemical agent O.C., can be used, as well as evacuation steps, and
those detainees who were sprayed or exposed to the chemical agent **must**
be taken to the clinic immediately !.

31. The plaintiff arrived in the clinic and was log in the computer as
well as the log book of the time of arrival and why the plaintiff was
brought to the clinic by the clinic officer.

32. The clinic officer asked officer Cielto #3731 for the injury repo-
rt and officer Cielto #3731, did not have one for me. The clinic
officer then stated to officer Cielto #3731, that he must fillout one
immediately on the plaintiff. NYCDOC officer Cielto #3731, complied
and fillout the injury report.

33. After the plaintiff sat down in the waiting area detainees bullpen
waiting to be seened by the doctor for injuries sustained. The plaint
iff waited for about close to four hours before finally being seened
by a doctor.

34. All of a sudden there was an altercation with several younger
detainees in the corridor directly out side the clinic. NYCDOC officers
Security team at R.N.D.C., sprayed the younger detainees with the

chemical agent O.C. Several security team officers were exposed and were brought to the clinic for treatment due to be expose to the chemical agent. The clinic staff and doctors gave treatment to the NYCDOC officers and one school teacher who was exposed to O.C. as well.

35. Meanwhile the plaintiff is sitting in the waiting area in pain and observing the security team officers coming in the clinic for treatment for injuries sustained because of O.C. exposer.

36. Plaintiff started to complain to the clinic officer **Monroe**, and he stated to the plaintiff that medical staff was going to treat New York City Department of Correction officer and staff first before I can be seen by a doctor because they are a priority.

37. The plaintiff started to complain some more to officer Monroe, but was still denied immediate treatment.

38. Then about a hour later the plaintiff still waiting to be seen by a doctor another situation occurred. There was a accident with one of the transportation buses returning from a court run and the injured detainees were brought to the clinic and the doctors started to give them treatment while the plaintiff is waiting to be seen because of being directly sprayed with the chemical agent O.C. by NYCDOC officer Cielto #3731.

39. At this point, plaintiff injuries consisted of severe irritation of the skin by chemical agent O.C. , difficulty breathing, headach, and the plaintiff could not vomit anymore because there was nothing in his stomach.

40. By now its about 2:30pm and the plaintiff have been waiting inside

the clinic bullpen and not been seened by a doctor or any other medical staff.

41. Captain **Waiters**, the clinic captain on duty was making her rounds and came into the clinic waiting area for detainees and the plaintiff started to complain to her about being sprayed with the chemical agent O.C., and that I have been waiting to be seened by a doctor since 12:00pm and been denied prompt medical treatment because of injured NYCDOC officers (security team), a teacher, and injured detainees that were brought to the clinic from off a transportation bus accident. Captain Waiters, told the plaintiff that she's going to see what's going and why I have not beed seen yet.

42. Finally around 3:30pm the plaintiff summon to be seened by a doctor.

43. The plaintiff explained what happen to him and injuries to the doctor who bacically did nothing, but told me to take a cool shower and get rid of the contaminated clothing (uniform).

44. The plaintiff filed a grievance about the following: Being sprayed by officer Cielto #3731, with the chemical agent O.C.. The plaintiff not been evacuated from Mod #2 housing unit for about 90 minutes. The plaintiff being denied immediate medical attention by NYCDOC officers and medical (clinic) staff. While in the clinic waiting for treatment and complaining of injuries R.N.D.C. security team officers and a school teacher was brought to the clinic for treatment, and a accident that occurred on a transportation bus and the detainees were brought to the clinic for treatment and this prevented the plaintiff from receiving treatment for injuries sustained.

(10)

45. The grievance coordinator summon the plaintiff to her office, and she stated to the plaintiff sarcastically Mr. Young, you wrote a book.

46. The grievance coordinator then asked the plaintiff why did I write so much on my grievance and the plaintiff then stated to her that he's complaining  about everything that happened.

47. The grievance coordinator then stated to the plaintiff from what she read this seems like a medical issue and that she's going to forward my grievance to the clinic and I should be hearing something soon from them.

48. The plaintiff did not want get into a dispute with the grievance coordinator and her decision to send my grievance to NYC Health and Hospitals who is in charge of the medical care and providers at the Robert N. Davoran Center.

49. Plaintiff grievance was not only a denial of immediate medical treatment once he arrived in the clinic, but also about about NYCDOC officer misconduct and use of excessive force. The grievance coordinator has a reputation at the R.N.D.C. facility of not resolving issues that detainees submit grievances for. Even officers at R.N.D.C ., facility don't worry about any detainees submitting grievances to her about them!.

50. The plaintiff could clearly see that the grievance coordinator did not want to deal with my issues regarding being sprayed with the chemical agent O.C., and excessive unreasonable force by a correction officer and failure to provide prompt medical by care by NYC Department of correction and NYC Health and Hospitals.

51. The plaintiff never heard anything from NYC Health and Hospitals

or from any of there staff in the clinic at Robert N. Davoran Center.

52. **See Exhibit A.** A copy of the grievance submitted to the grievance coordinator at R.N.D.C. facility.

53. Plaintiff repeat, reiterate, and reallege with the same force and effect as if fully set forth here at length, each and every allegation alleged and set forth in paragraph **1-52** of this complaint.

54. As a direct and proximate result of NYCDOC officer Cielto #3731 misconduct, excessive force, denial of immediate medical treatment by New York City Department of Correction and NYC Health and Hospitals, and abuse of the defendants as set forth above the plaintiff has suffered and continues to suffer emotional and psychological pain.

55. At all times pertinent to these allegations, Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to the Defendant or detainees.

56. At no time did NYCDOC officer Cielto #3731 or any other Defendant officer have probable cause to believe Plaintiff was involved in the altercation in Mod #2 housing unit bathroom.

57. NYCDOC officer Cielto #3731 and the other defendants acted with actual malice towards Plaintiff and with willful ans wanton indifference to and deliberate disregard for the statutory and constitutional rights of Plaintiff. NYCDOC officer Cielto #3731 actions and the actions of the other Defendants constitute unreasonable and **excessive** use of **force** by correction officers of the The City Of New York.

58. Upon information and belief, at all times pertinent, The City of New York, Robert N. Davoran Center Riker's Island permitted and tolerated a pattern and practice of unreasonable use of **force** by

(12)

correction officer of the City Of New York.

59. Upon information and belief, The City Of New York, Robert N. Davoran Center Riker's Island has maintained a system of review of correction officers conduct so untimely and cursory as to be ineffective and permit and tolerate the unreasonable and **excessive** use of **force** by correction officers.

60. The act, omissions, systemic flaws, policies and customs of the City Of New York cause correction officers of the City Of New York to believe that **excessive** and unreasonable use of **force** would not be aggressively, honestly and properly investigated, with the forseeable result that correction officers are more likely to use **excessive** or unreasonable **force** against Plaintiff and others detainees in the future.

## COUNT I. VIOLATION OF CONSTITUTIONAL RIGHTS DEFENDANTS NYCDOC OFFICER CIELTO #3731
### (Claim for Compensatory Damages)

61. Plaintiff incorporates by reference paragraphs 1 through 60.

62. The intentional use of **excessive force** by NYCDOC officers CIELTO #3731, violated the rights of Plaintiff as guaranteed by the Fourth, Fifth, and Eight Amendments to the United States Constitution, for which Defendant officer are individually liable.

## COUNT II. VIOLATION OF CONSTITUTIONAL RIGHTS DEFENDANTS NYCDOC OFFICER CIELTO #3731, NEW YORK CITY DEPARTMENT OF CORRECTION
### (Claim for Exemplary Damages)

63. Plaintiff incorporates by reference in paragraphs 1 through 62.

64. The intentional use of **excessive force** through the chemical agent

(13)

O.C., by NYCDOC officer CIELTO #3731, when the Plaintiff was unarmed
and did not pose a threat of death or grievous bodily injury to
Defendants or others, when Defendant had no lawful authority to use
deadly or nondeadly **force** against Plaintiff, was done with actual
malice towards Plaintiff and with willful and wanton indifferencs to
and deliberate disregard for constitutional rights of Plaintiff.
Plaintiff is thus entitled to exemplary damages.

### COUNT III. VIOLATION OF CONSTITUTIONAL RIGHTS DEFENDANTS NYCDOC OFFICER CIELTO #3731, NEW YORK CITY DEPARTMENT CORRECTION
### (Claim for Compensatory Damages)

65. Plaintiff incorporates by reference in paragraphs 1 through 64.
66. The intentional use of **excessive force** through thr Chemical agent
O.C., by NYCDOC officer CIELTO #3731, New York City Department Of
Correction, when the Plaintiff was unarmed and did not pose a threat
of death or grievouse bodily injury to Defendants or others, when
Defendants had no lawful authority to use deadly or nondeadly **force**
against Plaintiff was done with actual malice towards Plaintiff and
with willful and wanton indifference to and deliberate disregard for
the statutory Civil rights of Plaintiff.

### COUNT IV. VIOLATION OF CONSTITUTIONAL RIGHTS DEFENDANTS NYCDOC WARDEN PRESSLEY R.N.D.C., OFFICER CIELTO #3731,, NEW YORK CITY DEPARTMENT OF CORRECTION, NYC HEALTH AND HOSPITALS
### (Claim for Compensatory Damages)

67. Plaintiff incorporates by reference in paragraphs 1 through 66.
68. It was the policy and practice of City of New York to employ
certain correction officers, including Defendants Warden Pressley
R.N.D.C., officer Cielto #3731, New York City Department Of
Corrections.

69. It was the policy and practice of the City of New York to author-
ized certain correction officers, including Defendants Warden
Pressley R.N.D.C., officer Cielto #3731, New York City Department of
Correction to cover up the use of **excessive force** despite the lack of
probable cause to justify the use of **force** through the chemical agent
O.C. This policy and practice of Robert N. Davoran Center Riker's
Island encourage and caused consritutional violations by correction
officers of the City of New York, including the violation of Plainti-
ff constitutional rights by Defendants Warden Pressley R.N.D.C.,
officer Cielto #3731, and New York City Department Of Corrections.

70. It was the policy and practice of City Of New York to authorize
certain officers, including Defendants Warden Pressley R.N.D.C.,
NYCDOC officer Cielto #3731, New York City Department Of Correction,
New York City Health And Hospitals, to deny and prevent prompt
**medical treatment** of injured persons in the care custody of The City
Of New York, New York City Department Of Correction at the Robert N.
Davoran Center, to prevent detained persons from receiving prompt
care, and to abuse verbally those detained persons who sought to
asserts these rights. These policies and practice of the City Of New
York encourage and caused consitutional violations by New York City
Department of Correction officers, including the violations of Plain
tiff consitutional rights by Defendants warden Pressley R.N.D.C.,
offficer Cielto #3731 New York City Department Of Corrections, New
York City Health And Hospitals.

71. At all pertinent times, Defendants Warden Pressley R.N.D.C.,
New York City Department Of Correction, and other unknown supervisors
who supervised the officer who unlawfully violated Plaintiff rights-

(15)

encourage and tolerated the policies and practices. Defendant Warden Pressley R.N.D.C., New York City Department Of Correction refused to adequately train, direct, supervised, or control Defendant officers so as to prevent the violations of Plaintiff constitutional rights.

72. Defendant Warden Pressley R.N.D.C., NYCDOC officer Cielto #3731, New York City Department Of Correction, New York City Health And Hospitals were acting within the scope of there employement and pursuant to the policies and practices of the City of New York. These policies and practices were enforced by Defendants Warden Pressley R.N.D.C , NYCDOC officer Cielto #3731, New York City Department Of Correction, New York City Health And Hospitals, and were a moving force, proximate cause, or affirmative link behind the conduct causing the Plaintiff injury. The City Of New York and Defendants Warden Pressley R.N.D.C., NYCDOC Officer Cielto #3731, New York City Department Of Correction, New York City Health And Hospitals are therefore liable for the violation of Plaintiff constitutional rights by Defendants Warden Pressley R.N.D.C., NYCDOC Officer Cielto #3731, New York City Department Of Correction, New York City Health And Hospitals.

## COUNT V. CONSPIRACY TO VIOLATE CIVIL RIGHTS DEFENDANTS THE CITY OF NEW YORK, WARDEN PRESSLEY R.N.D.C., NYCDOC OFFICER CIELTO #3731, NEW YORK CITY DEPARTMENT OF CORRECTION, NEW YORK CITY HEALTH AND HOSPITALS
### (Claim for Compensatory Damages)

73. Plaintiff incorporates by reference paragraphs 1 through 72.

74. Defendants The City Of New York, Warden Pressley R.N.D.C., NYCDOC Officer Cielto #3731, New York City Department Of Correction, and New York City Health And Hospitals conspired to violate Plaintiff statuto-

(16)

ry Civil rights on violation of 42 U.S.C.A. § 1983, for which Defendants The City Of New York, Warden Pressley R.N.D.C., NYCDOC Officer Cielto #3731, New York City Department Of Correction, New York City Health And Hospitals are individually liable.

## COUNT VI. ASSAULT AND BATTERY
## DEFENDANTS NYCDOC OFFICER CIELTO # 3731, NEW YORK CITY DEPARTMENT OF CORRECTION
### (Claim for Compensatory Damages)

75. Plaintiff incorporates by reference paragraphs 1 through 74.

76. The verbal abuse, and use of nondeadly **force** by Defendants NYCDOC Officer Cielto #3731, New York City Department Of Correction when Defendants had no lawful authority to spray the Plaintiff with chemical agent O.C., when the Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendants or others, was without justification or provocation was **excessive**, and consitues assault and battery for which Defendants NYCDOC Officer Cielto #3731, New York City Department Of Correction are individually liable.

77. As a proximate result of the assault and battery committed by Defendants NYCDOC Officer Cielto #3731, New York City Department Of Corrections, Plaintiff has sustained permanent injury. These injuries have caused and will continue to cause Plaintiff great suffering mentally.

## COUNT VII. ASSAULT AND BATTERY DEFENDANTS NYCDOC OFFICER CIELTO #3731, NEW YORK CITY DEPARTMENT OF CORRECTION
### (Claim for Exemplary Damages)

78. Plaintiff incorporates reference paragraphs 1 through 77.

79. The intentional spraying of the chemical agent O.C., and verbal

abuse of Plaintiff by Defendants NYCDOC Officer Cielto #3731, New York City Department Of Correction, when the Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendant or others, when Defendant did not have lawful authority to use nondeadly **force** against Plaintiff, was done with actual deliberate disregard for human life and the rights of Plaintiff. Plaintiff is thus entitled to exemplary damages.

## COUNT VIII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESSS DEFENDANTS NYCDOC OFFICER CIELTO #3731, NEW YORK CITY DEPARTMENT OF CORRECTION
### (Claim for Compensatory Damages)

80. Plaintiff incorporates by reference to paragraphs 1 through 79.

81. Defendants NYCDOC Officer Cielto #3731, New York City Department Of Correction intentionally sprayed the chemical agent O.C., and verbal abuse Plaintiff in a manner that was extreme, outrageous, and unjustified, and caused Plaintiff to suffer physical and emotional distress for which Defendants NYCDOC Officer Cielto #3731, New York City Department Of Correction are individually liable.

## COUNT IX. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS DEFENDANTS NYCDOC OFFICER CIELTO #3731, NEW YORK CITY DEPARTMENT OF CORRECTION
### (Claim for Exemplary Damages)

82. Plaintiff incorporates by reference paragraphs 1 through 81.

83. The intentional use of **excessive force** through the chemical agent O.C., and verbal abuse of Plaintiff by defendants NYCDOC Officer Cielto #3731, New York City Department Of Correction were unjustified and done with actual malice and wanton indifference to and deliberate disregard for human life and rights of Plaintiff. Plaintiff is thus

entitled to exemplary damages.

## COUNT X. RESPONDEAT SUPERIOR LIABILITY DEFENDANT WARDEN PRESSLEY R.N.D.C., NYCDOC OFFICER CIELTO #3731, NEW YORK CITY DEPARTMENT OF CORRECTION
### (Claim for Compensatory Damages)

84. Plaintiff incorporates by reference paragraphs 1 through 83.

85. At all times pertinent here to, Defendants Warden Pressley R.N.D.C., NYCDOC Officer Cielto #3731, New York City Department Of Correction were acting within the scope of their employement as an officer of New York City Department Of Corrections.

86. The City Of New York is liable for Compensatory damages under the doctrin of respondeat superior for the intentional torts of Defendants Warden Pressley R.N.D.C., NYCDOC Officer Cielto #3731, New York City Department Of Correction committed within the scope of their employement.

## COUNT XI. RESPONDEAT SUPERIOR LIABILITY DEFENDANT WARDEN PRESSLEY R.N.D.C., NYCDOC OFFICER CIELTO #3731, NEW YORK CITY DEPARTMENT OF CORRECTION
### (Claim for Exemplary Damages)

87. Plaintiff incorporates by reference paragraphs 1 through 86.

88. The City Of New York, through its agents, expressly authorized Defendants Warden Pressley R.N.D.C., NYCDOC Officer Cielto #3731, New York City Department Of Correction to use **excessive force**; knew, through its agents, that Defendants officers had a propensity for committing intentional torts, using **excessive force** in the line of duty; and acquiesced in the Defendants wrongful conduct. Plaintiff is thus entitled to exemplary damages against The City Of New York for the malicious conduct of Defendants.

(19)

### COUNT XII. NEGLIGENCE DEFENDANTS WARDEN PRESSLEY R.N.D.C., NYCDOC OFFICER CIELTO #3731, NEW YORK CITY DEPARTMENT OF CORRECTION

#### (Claim for Compensatory Damages)

89. Plaintiff incorporates by reference paragraphs 1 through 88.

90. Defendants Warden Pressley R.N.D.C., NYCDOC Officer Cielto #3731, New York City Department Of Correction, while acting as agents and employees for The City Of New York in their capacity as corrections officers for The City Of New York, owed a duty to Plaintiff to perform their correctional duties without the use of **excessive force**. Defendants use of **force** upon the Plaintiff, when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendants or others constitutes negligence for which Defendants are individually liable.

91. Defendants NYCDOC Officer Cielto, New York City Department Of Correction use of **force** upon the plaintiff when Defendats had no lawful authority to use **force** against Plaintiff consitutes negligence for which Defendants NYCDOC Officer Cielto #3731, New York City Department Of Correction are individually liable.

92. As proximate result of Defendants negligent use of **force**, Plaintiff has sustained injuries and these injuries have caused and will continue to cause Plaintiff pain and suffering mentally.

### COUNT XIII. NEGLIGENCE DEFENDANTS NYCDOC OFFICER CIELTO #3731, NEW YORK CITY DEPARTMENT OF CORRECTION
#### (Claim for Exemplary Damages)

93. Plaintiff incorporates by reference paragraphs 1 through 92.

(20)

94. The negligent use of **force** upon the Plaintiff by Defendants NYCDOC Officer Cielto #3731, New York City Department Of Correction when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendant or others, and when Defendants had no lawful authority to use **force** against Plaintiff was done with willful and wanton indifference to deliberate disregard for human life and the rights of Plaintiff. Plaintiff is thus entitled to exemplary damages.

## COUNT XIV. NEGLIGENCE DEFENDANTS
### NYCDOC OFFICER CIELTO #3731, NEW YORK CITY DEPARTMENT OF CORRECTION
### (Claim for Compensatory Damages)

94. Plaintiff incorporates by reference paragraphs 1 through 93.

95. At all times of the incident, Defendants NYCDOC Officer Cielto #3731, New York City department Of Correction were acting within the scope of their employement as officers of New York City Department of Correction.

96. New York City Department of Correction Robert N. Davoran Center is liable for compensatory damages under the doctrin of respondeat superior for the negligence of Defendants committed within the scope of their employement.

## COUNT XV. NEGLIGENCE DEFENDANT
### THE CITY OF NEW YORK, WARDEN PRESSLEY R.N.D.C., NEW YORK
### CITY DEPARTMENT OF CORRECTION OFFICER CIELTO #3731
### NEW YORK CITY DEPARTMENT OF CORRECTION
### (Claim for Compensatory Damages)

97. Plaintiff incorporates by reference paragraphs 1 through 96.

97. Defendants The City of New York, Warden Pressley R.N.D.C., NYCDOC Officer Cielto #3731, New York City Department Of Correction

(21)

failed to train, supervised, and discipline correction officers,
including the individually name Defendant NYCDOC officer Cielto #3731
, as to prevent the use of **excessive force** through the chemical agent
O.C.

98. Defendant's The City of New York, Warden Pressley R.N.D.C., New
York City Department Of Correction failure to train, supervised, and
discipline amounts to deliberate indifference to the rights of
detainees with who the Defendant NYCDOC officer Cielto #3731, and the
other New York City Department Of Correction authorities in this case
comes into contact, including Plaintiff. it is this failure that has
created and encourage on going use of **excessive force** through the
chemical agent O.C., by New york City department Of Correction
officers, without fear of any retribution and or sanctions by their
superiors. Plaintiff sustained injuries and these injuries have
caused and will continue to cause Plaintiff to suffer mentally as
well as physically.

### COUNT XVI. NEGLIGENCE DEFENDANT
### WARDEN PRESSLEY R.N.D.C., NYCDOC OFFICER CIELTO #3731,
### NEW YORKC CITY DEPARTMENT OF CORRECTION
#### (Claim for Exemplary Damages)

99. Plaintiff incorporates by reference paragraphs 1 through 98.

100. The deficiency in training, supervison, and discipline of New
York City Department Of Corrections officers, including Defendant
NYCDOC officer Cielto #3731, was an actual cause of the constitutional
deprivations and injuries suffered by the Plaintiff.

101. The deficiency in training, supervison, and discipline of New
York City Department Of Correction officer represents a deliberate

(22)

indifference on the part of Defendants to the right of incarcerated detainees including the Plaintiff. Plaintiff is thus entitled to exemplary damages.

### COUNT XVII. DENIAL OF MEDICAL TREATMENT DEFENDANTS NEW YORK CITY DEPARTMENT OF CORRECTION OFFICER CIELTO #3731, NEW YORK CITY DEPARTMENT OF CORRECTION, NEW YORK CITY HEALTH AND HOSPITALS

102. Plaintiff incorporates by reference paragraphs 1 through 101.

103. That at the aforesaid palce and time the Defendant NYCDOC officer Cielto #3731, New York City Department Of Correction, and New York City Health And Hospitals were acting within the scope of their emploement, as employees of The City Of New York.

104. The Defendants NYCDOC officer Cielto #3731, New York City Department of Correction, and New york City Health And Hospitals knew from being informed by the Plaintiff, or should have known that Plaintiff had a serious meidical need and was in need of immediate medical care and or medication. Further, through the Defendants willful and wanton conduct, Defendants failed to take reasonable action to summon medical care.

105. As a result of the foregoing, the Defendants NYCDOC officer Cielto #3731, New York City Department of Correction, and New York City Health And Hospitals deliberately and intentionally failed to promptly provide the Plaintiff with such medical treatment. Plaintiff has sustained injuries including, but not limited to, physical, mental , and emotional pain and suffering all to his detriment.

106. The lack of medical care or attention inflicted upon the plaintiff by Defendants NYCDOC officer Cielto #3731, New York City

(23)

Deapartment Of Correction, and New York City Health and Hospitals was
unnecessary, unreasonable, and excessive and therefore in violation
of Plaintiff's **Eighth Amendment Rights.** The conduct of Defendants
violated Plaintiff's **substantive right to due process under the
Fourteenth Amendment** to the United states Constitution, in that it
denied Plaintiff adequate prompt medical treatment.

### COUNT XVIII.
### Plaintiff Against The City Of New York IDEMNIFICATION

107. Plaintiff incorportes by refernce paragraphs 1 through 106.

108. The City Of New York is empowered and directed to pay any
judgement for compensatory and exemplary damages and any associated
attorney's fees and costs for which an employee New York City
Department Of Correction, New York City Health And Hospitals, acting
within the scope of their employement.

109. In the event that a judgement for compensatory and exemplary
damages is entered against Defendants Warden Pressley R.N.D.C., NYCDOC
officer Cielto #3731, New York City Department Of Correction, and New
York City Health And Hospitals. The City Of New York must pay the
judgement as well as the associated attorney fees and costs.

**WHERFORE,** Plaintiff request that this court grants the following
relief:

A). Declare the Defendants The City Of New York, during all relevant
times failed to implement policy to train its correction officer to
engage in reasonable us of proper force, rather than excessive without
legal cause. This pattern of practice is unlawful and with willful and
deliberate indifference to the constitutional rights of detainees, and

a widespread of systematic abuses and policies to violate clearly
establish law in violation of 42. U.S.C. § 1997.

B). Declare that Warden Pressley R.N.D.C., allowed the use of
excessive force through the chemical agent O.C., at the Robert N.
Davoran Center Riker's Island. Warden Pressley, Failure to Intervene
and permitted a widespread custom and practice of permitting the
occurrence of these types of wrongs, Cruel or Unusual Punishment, and
unequal treatment under the law in violation of 42 U.S.C. § 1983.

C). Declare that New York City Department Of Correction Officer Cielto
#3731, use of excessive force was unnecessary, unreasonable and
excessive. The misconduct described was undertaken intentionally with
willful indifference to Plaintiff's constitutional and State Law
rights. As a result of Defendant NYCDOC officer Cielto #3731,
Plaintiff sustained physical and emotional injuries.

D). Declare that New York City Department Of Correction, as a matter
of both policy and practice facilitates the very type of misconduct
at issue here by failing to adequately punish and discipline prior
instances of similar misconduct, thereby leading correction officers
to believe their actions will never be scrutinized, and in that way,
directly encouraging future abuses such as those affecting the
Plaintiff. NYCDOC failure to train its correction officers to properly
assess a detainee's sreious medical need or to seek medical for a
detainee's serious medical need. The Law required that Plaintiff be
subjected to Due Proceess of law and not subjected to Cruel or
Unusual Punishment.

E). Declare that New York City Health And Hospitals, conduct violated

(25)

Plaintiff **Eight Amendment** and Substantive right to Due Process under the **Fourteenth Amendment** to the U.S. Constitution, in that it denied Plaintiff prompt adequate medical care and treatment, thus committing gross negligence. Therefore, defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

**F).** Issue an preliminary injuction seeking an Order requiring the City Of New York to create and implement new policies to enforce the constitution rights under 42 U.S.C. § 1997 A CRIPA.

**E).** Award the Plaintiff damages in the following amounts:

**1.** $10,000,000.00 Compensatory damages in favor of Plaintiff.

**2.** $6,000,000.00 Exemplary damages in favor of Plaintiff.

**3.** Costs of this action, including reasonable attaorney fees to the Plaintiff; and

**4.** Such other and further releif as the court may deem appropriate.

Dated: 9th Day of April 2018

SHAKUR YOUNG
DIN:17R3045
GREENE CORRECTION FACILITY
COXSACKIE, NY 12051-0975

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

9th Day of April 2018

SHAKUR YOUNG

EXHIBIT A

Form: # 7101R, Eff.: 09/10/12, Ref.: Dir. #3376 – page 1



### City of New York - Department of Correction

# INMATE GRIEVANCE AND REQUEST PROGRAM STATEMENT FORM

| Inmate's Name: | Book & Case #: | NYSID # (optional): |
|---|---|---|
| Shakur Young | 3101700128 | |

| Facility: | Housing Area: | Date of Incident: | Date Submitted: |
|---|---|---|---|
| R.N.D.C. | Mod#2 | 9/18/17 | 9/19/17 |

All grievances and requests must be submitted within ten business days after the incident occurred, unless the condition or issue is on-going. The inmate filing the grievance or request must personally prepare this statement. Upon collection by Inmate Grievance and Request Program (IGRP) staff, IGRP staff will time-stamp and issue it a grievance/request reference number. IGRP staff shall provide the inmate with a copy of this form as a record of receipt within two business days of receiving it.

**Request or Grievance:**

ON 9/18/17 at 10:30AM, I was IN the Bathroom IN Mod#2 and a altercation occurred between two detainees and all of a sudden. Officer Cietro #3731 came into the bathroom and he sprayed agent O.C. directly ON Me and the two detainees who were fighting. I immediately began to feel a burning sensation on my face, eyes, Arms AND Neck Area. I also began to choke, Vomit and had a extremely hard time breathing. See attach sheet ——>

**Action Requested by Inmate:**

Why wasn't I seened by medical UNtil 3:30pm. why did officers, Staff AND detainees become a prority over Me and I was directly sprayed with O.C. That Any detainee sprayed or exposed to O.C. Should be immediately seened by a doctor.

#### Please read below and check the correct box:

| | Yes | No |
|---|---|---|
| Do you agree to have your statement edited for clarification by IGRP staff? | ☐ Yes | ☑ No |
| Do you need the IGRP staff to write the grievance or request for you? | ☐ Yes | ☑ No |
| Have you filed this grievance or request with a court or other agency? | ☐ Yes | ☑ No |
| Did you require the assistance of an interpreter? | ☐ Yes | ☑ No |

Inmate's Signature: _Shakur Young_          Date of Signature: 9/19/17

#### For DOC Office Use Only
IGRP RETAINS THE DOUBLE-SIDED ORIGINAL FOR ADMINISTRATIVE RECORDS.
IGRP MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.

| Time Stamp Below: | Grievance and Request Reference #: | Category: |
|---|---|---|
| | Inmate Grievance and Request Program Staff's Signature: | |

As I exited to the front of the captain Area on page # 1750 was standing there and I asked him could I please go to the clinic and he ordered Me to go sit on my bed!, instead of evacuating Me from the the housing unit and sending me to the clinic for treatment of my injuries sustained from being directly sprayed with O.C. by officer Cierto # 3731. After going to my bed I began to vomit as well as choking having difficulty breathing I got up from my bed and went to the garbage can to vomit I was then ordered by Officer Cierto # 3731 to go to the day room and remain there until further Notice. Then shortly afterwards officer Cierto # 3731 made a announcement and I then went to the shower to wash my body and eyes because of the burning sensation I was continuously feeling!. Once in the shower the warm water made Me feel even worse. When I came out the shower officer Cierto # 373 told me to hurry up and get dress so I can eat and I refused and demanded to be taken to the clinic. I then exited the housing unit and sat down on a chair directly in from the bubble (control booth) for Mod # 2. All of this can be viewed on the camera (video) of Mod #2.

Shortly afterwards officer Cierto # 3731 escorted Me to the clinic where I remained for close to four hours before being seen by the doctor. While waiting to be seened by the doctor several other incidents occurred. There was a fight with several younger detainees out side of Medical/clinic area and the security team sprayed the O.C. chemical agent and several officers became exposed and were brought into Medical/clinic for treatment for injuries sustained, the Doctors were told not to see any Detainee and to treat only D.O.C. Staff! (which was officers and one teacher). I started to complain and a officer, I believe it was officer Mason who was one of the officer's working in the clinic stated that that officers and staff members comes first!, as if I didn't matter or wasn't a priority. There was another situation that had occurred on a court transportation bus that had a accident on the road and the wounded detainees were brought to the clinic for treatment and they were place ahead of me to see the doctor. Around 2:30pm I started to complain to, Clinic Captain Walters about how I was directly sprayed with O.C., that I have been in the clinic since noon time and have been denied treatment because of officer's, staff and the Bus accident became a priority!. Finally around 3:30pm I was seen by a doctor. I should have been seen immediately once I arrived in the clinic. The clinic video can show my time spent th

EXHIBIT B

Claim #

Exbit — A

415R

## THE CITY OF NEW YORK
## DEPARTMENT OF CORRECTION

# DIRECTIVE



| [ ] NEW | [ ] INTERIM | [X] REVISED | SUBJECT **CHEMICAL AGENTS** | | |
|---|---|---|---|---|---|
| EFFECTIVE DATE **04/27/12** | | *TERMINATION DATE / / | | | |
| CLASSIFICATION # **4510R-F** | SUPERSEDES **4510R-E** | DATED **08/22/08** | APPROVED FOR WEB POSTING [ ] YES [X] NO | DISTRIBUTION **D** | PAGE 1 OF 19 PAGES |
| RECOMMENDED FOR APPROVAL BY REVIEW BOARD MEMBER | | | AUTHORIZED BY THE COMMISSIONER | | |
| MICHAEL HOURIHANE , CHIEF OF DEPARTMENT   SIGNATURE | | | DORA B. SCHRIRO | | SIGNATURE |

## I.   INTRODUCTION

A.   The use of chemical agents has proven to be an effective method in controlling certain situations. However, the use of chemical agents must be carefully evaluated prior to application.  Excessive use or prolonged exposure can result in harmful effects to the individuals involved. Therefore, chemical agents shall be used with the utmost discretion. The spirit and intent of this Directive is to permit the Department to employ the use of a tool (chemical agent) that would minimize physical confrontations between staff and inmates, thereby reducing physical injuries to both parties.

B.   As delineated in this Directive, the procedures for the use of authorized hand-held chemical agents are specifically differentiated from procedures regarding the use of all other approved chemical agents.

## II.   PURPOSE

To establish policy, guidelines and procedures for the use of hand-held aerosols and other authorized chemical agents.

## III.   POLICY

A.   The procedures contained herein shall be strictly complied with by all members of the Department.

B.   Hand-held aerosols and other chemical agents shall only be used when appropriate, and in accordance with both New York State Law and Departmental regulations, outlined herein.

C.   Random and arbitrary use of chemical agents is strictly forbidden.

*Exbit - B*

416R

| | EFFECTIVE DATE<br>04/27/12 | SUBJECT<br>CHEMICAL AGENTS | |
|---|---|---|---|
|  | CLASSIFICATION #<br>4510R-F | |  |
| | DISTRIBUTION<br>D | APPROVED FOR WEB POSTING<br>☐ YES  ☒ NO | PAGE 2 OF<br>19 PAGES |

## III. POLICY (cont.)

**D.** Unless specifically prohibited by the Chief of Department and/or the Chief of Facility Operations, all facilities and divisions are authorized to use hand-held aerosols.

**E.** Hand-held aerosols may be authorized at the command level and shall be a part of the authorized daily uniform and equipment of all Captains and authorized/certified Correction Officers. Prior authorization from Headquarters and notification to the Central Operations Desk (C.O.D.) is not required.

**F.** The use of all other chemical agents (other than hand-held aerosols) shall only be authorized by one (1) of the following individuals:

    1. Commissioner or designee;

    2. First Deputy Commissioner;

    3. Chief of Department or designee;

    4. Deputy Chief of Department;

    5. Assistant Chief;

    6. Supervising Warden; and/or

    7. Field Command Unit Head or designee not to extend below the rank of Assistant Deputy Warden.

## IV. GUIDELINES

**A.** INQUIRY CONCERNING MEDICAL CONTRAINDICATIONS

Prior to the use of any chemical agent against an inmate, the person responsible for such use shall notify facility health services staff to determine from such staff whether there is a medical reason why chemical agents should not be used; provided, however, that no such notification must be made, nor medical clearance obtained, in emergency circumstances when a delay in the use of a chemical agent would present an immediate threat of death or serious injury, or would severely threaten the safety or security of the facility.

*EXhibit — C*

| 416R | EFFECTIVE DATE<br>**04/27/12** | SUBJECT<br>**CHEMICAL AGENTS** |  |
| | CLASSIFICATION #<br>**4510R-F** | | |
| | DISTRIBUTION<br>**D** | APPROVED FOR WEB POSTING<br>☐ YES   ☒ NO | PAGE 3 OF<br>**19** PAGES |

**IV.   GUIDELINES (cont.)**

    **B.**   HAND-HELD CHEMICAL AGENTS

        1.   Type

            Only Orthochlorobenzalmalononitrile (CS) or Oleoresin Capsicum (OC) contained in an aerosol dispenser in liquid or dust form is authorized for use within the Department.

        2.   Authorized Products

            Note:   The letters (CS) or (OC) must be legible.

            a.   Federal Lab 587 CS dust, large black container with dark blue label.

            b.   Federal Lab Mk - VI O/C, black container with orange label; and

            c.   Security Equipment Corp. Sabre 5.0 Mk – VI O/C, black container with light blue label.

            d.   Security Equipment Corp. Sabre Red Mk – VI O/C (10% concentration), black container with light blue label.

            e.   Sabre Aerosol Projector MK-9 and "Cell Buster" – O/C black container with white label.

            Note:   The use of the Sabre Aerosol Projector MK-9 and "Cell Buster" is restricted to trained personnel only.

        3.   Anticipated effects of CS include:

            a.   Visual impairment (tearing);

            b.   Coughing and/or sneezing;

            c.   Painful burning of eyes and throat;

            d.   Extreme temporary pain or discomfort in all the moist, warm parts of the body including mucous membranes and throat;

            e.   Skin irritation including blistering after long exposure;

            f.   Compressed chest and panic caused by inability to breathe properly;

*Exhi-D*

| 416R | | | |
|---|---|---|---|
| **EFFECTIVE DATE** 04/27/12 | **SUBJECT** CHEMICAL AGENTS | |  |
| **CLASSIFICATION #** 4510R-F | | | |
| **DISTRIBUTION** D | **APPROVED FOR WEB POSTING** ☐ YES  ☒ NO | **PAGE 4 OF 19 PAGES** | |

## IV.  GUIDELINES (cont.)

    g.    Desire but inability to defecate;

    h.    Subject(s) may become immobilized; and

    i.    Side effects are different and individual in nature.

4.    Anticipated effects of OC include:

    a.    Swelling of the mucous membranes;

    b.    Immediate involuntary closing of the eyes;

    c.    Uncontrollable coughing;

    d.    Gagging;

    e.    Gasping for breath; and

    f.    Sensation of intense burning of the skin and mucous membranes inside the nose and the mouth.

5.    Commanding Officers of each facility and division shall designate staff members who shall be authorized/certified to use and/or dispense hand-held aerosols.

6.    Certification/re-certification in the use of chemical agents shall be conducted through training programs coordinated by the Correction Academy on an annual basis.

7.    Every Commanding Officer shall ensure that personnel who are responsible for authorizing and/or using hand-held aerosols, receive instruction as noted in Section IV.B.6.

8.    Time permitting, members anticipating the use of aerosols shall make every attempt to remove from the area of potential contamination all persons for whom the administration of the chemical agent is not intended. Medical staff should also be notified to prepare to provide immediate assistance.

Exbit - E

| 416R | | | | | |
|------|---|---|---|---|---|
| | **EFFECTIVE DATE** 04/27/12 | **SUBJECT** | CHEMICAL AGENTS | |  |
| | **CLASSIFICATION #** 4510R-F | | | | |
| | **DISTRIBUTION** D | **APPROVED FOR WEB POSTING** ☐ YES ☒ NO | | **PAGE 5 OF** 19 PAGES | |

**IV.  GUIDELINES (cont.)**

    **C.  CHEMICAL AGENTS - OTHER THAN HAND-HELD AEROSOL**

        **1.  Types**

            Only Orthochlorobenzalmalononitrile (CS) and low toxic or non-toxic smoke are authorized for use within the Department.  The following chemical agent delivery systems may be used:

            a.   Combustion (burning);

            b.   Aerosol liquid;

            c.   Aerosol dust;

            d.   Blast dispersion;

            e.   Liquid dissemination; or

            f.   Fog.

        **2.  Color Codes:**

            a.   BLUE (CS)

            Grenades or projectiles.

            b.   YELLOW (Smoke)

            Grenades containing low toxic or non-toxic screening smoke.

            c.   Any agent (other than hand-held aerosols) marked in a color other than the specified color codes, shall not be used.

        **3.  Authorized Products and Equipment:**

            Important Note:    Federal Lab and Defense Technology manufacture the authorized products listed below.  This list indicates identical products and their corresponding numbers from those manufacturers. The departmental inventory contains products which indicate either Federal Lab or Defense Technology with corresponding numbers as noted below.

*Exbit-F*

| 416R | EFFECTIVE DATE 04/27/12 | SUBJECT | | |
|---|---|---|---|---|
| | CLASSIFICATION # 4510R-F | **CHEMICAL AGENTS** | |  |
| | DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 6 OF 19 PAGES | |

## IV. GUIDELINES (cont.)

a. Federal Lab. #201-Z, one and one-half inch (1 1/2") Gas Gun.

b. Federal Lab. #203A, one and one-half inch (1 1/2") Gas Gun.

c. Federal Lab. #450A and Defense Technology #459, Grenade Launcher for #201-Z, and 203A Gas Guns.

d. Federal Lab. #457, and Defense Technology #1270, Grenade Launcher Cartridge; for #201-Z and 203A Gas Guns.

e. Federal Lab. #501, and Defense Technology #1142, Muzzle Dispersion Cartridge; dust type.

f. Federal Lab. #560, and Defense Technology #1182, Long Range Projectile; combustion type: range: 150 yards.

g. Federal Lab. #570, and Defense Technology #2002, Short Range Projectile; combustion type; range: 100 yards.

h. Federal Lab. #530, and Defense Technology #1152, Barricade Projectile; combustion type.

i. Federal Lab. #555, and Defense Technology #1072, Speedheat Grenade; combustion type.

j. Federal Lab. #515, and Defense Technology #1026, Triple Chaser Grenade; combustion type.

k. Federal Lab. #517, and Defense Technology #1032 Flameless Grenade; combustion type.

l. Federal Lab. #514, and Defense Technology #1042 Blast Dispersion Grenade; dust type.

m. Federal Lab. Fogger Model #298, Portable Thermal Irritant and Smoke Generator.

n. Federal Lab. #110-HC, and Defense Technology #1083 Smoke Grenade; combustion type; low toxic smoke.

o. Federal Lab. F-8-SAF, and Defense Technology #1063 Smoke Grenade; combustion type; non-toxic smoke.

Exbit ~ G

| | EFFECTIVE DATE **04/27/12** | SUBJECT | | |
|---|---|---|---|---|
| | CLASSIFICATION # **4510R-F** | **CHEMICAL AGENTS** | | |
| | DISTRIBUTION **D** | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE **7** OF **19** PAGES | |

## IV.  GUIDELINES (cont.)

> Note:    Smoke Grenades are for outdoor use only.

> p.    Ispra Model 5, Protectojet Ejector; CS filled.

> q.    Ispra Mini-Model 5, Protectojet Ejector; CS filled.

> r.    Sabre Aerosol Projector MK-9 and "Cell Buster"; OC.

> s.    Pepperball SA-200 Launcher System

> Note:    The Protectojet and Pepperball SA-200 Launcher System, are authorized standard equipment and shall be used only by trained Emergency Service Unit (ESU) staff. The Cell Buster, authorized for use only by staff trained to use such device, consists of an 18.5 oz MK-9 canister with hose and wand attachment. Use of the Pepperball SA-200 Launcher System is outlined in Operations Order 14/07 entitled "Pepperball System", dated 8/13/07.

4.    Prior authorization to use agents (other than hand-held aerosols) must be obtained from one (1) of the aforementioned individuals noted in Section III.F. of this Directive.

> Note:    Combustion type devices may cause fires if dispensed in close proximity to flammable objects or structures.

5.    The command unit head or designee shall notify C.O.D. and provide the following information:

> a.    Reason for the use of the chemical agent (other than hand-held aerosols).

> b.    Approximate number of inmates involved.

> c.    Area that the chemical agent is to be dispensed in.

> d.    Any other information that would assist one (1) of the authorizing individuals in rendering an objective decision.



Exbit-H



| 416R | | | | |
|---|---|---|---|---|
| | **EFFECTIVE DATE**<br>04/27/12 | **SUBJECT** | **CHEMICAL AGENTS** | |
| | **CLASSIFICATION #**<br>4510R-F | | | |
| | **DISTRIBUTION**<br>D | **APPROVED FOR WEB POSTING**<br>☐ YES   ☒ NO | **PAGE 8 OF**<br>19 PAGES | |

## IV.   GUIDELINES (cont.)

Note:   In an emergency, if time precludes the transmittal of notification, chemical agents may be used; however, attempts shall be made to notify the C.O.D. during the course of utilizing the agents.  In any case, C.O.D. shall be notified immediately after the chemical agent is dispensed.

6.   Prior to using chemical agents (other than hand-held aerosols) the authorizing supervisor from the facility or division shall notify the highest ranking medical staff person on-duty to have adequate medical personnel standing by and to assign medical personnel to triage these cases.  In addition, medical staff will be prepared to provide medical assistance to individuals who may require medical treatment due to exposure to chemical agents.

*No one to help us ?*

7.   During the use of chemical agents (other than hand-held aerosols), a certified supervisory officer shall be present and will direct the dispensing of said agent and all required decontamination procedures, contained herein.

8.   Commanding Officers of each facility and division shall designate staff members who shall be authorized to use and/or dispense chemical agents (other than hand-held aerosols) and any related equipment.

9.   Certification/re-certification in the use of chemical agents shall be conducted by the Correction Academy on an annual basis.

10.   Commanding Officers of each facility and division shall ensure that personnel who are responsible for authorizing and/or using chemical agents, receive instruction as noted in Section IV.B.6.

D.   STORAGE OF ALL AGENT EQUIPMENT

1.   Chemical agent munitions and related devices shall be stored within officially designated areas only and be maintained in a safe and secure manner.  Such storage shall ensure that only persons trained in the use of such articles have access to them.

2.   An officer assigned to the Security Office in each facility will be responsible for the day to day handling of all chemical agents and related equipment and will retain a copy of each quarterly inspection performed by ESU.  He/she shall be trained annually in the Department's prescribed chemical agent course.

3.   To avoid corrosion of firearms, CS/OC chemical agent munitions shall not be stored in the same enclosure with firearms.

*Exhibit-I*



| 416R | EFFECTIVE DATE **04/27/12** | SUBJECT **CHEMICAL AGENTS** | | |
|---|---|---|---|---|
| | CLASSIFICATION # **4510R-F** | | | |
| | DISTRIBUTION **D** | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE **9** OF **19** PAGES | |

## IV.   GUIDELINES (cont.)

4.   The designated area for CS chemical agent munitions storage shall be equipped with a ventilating fan and duct system.

E.   QUARTERLY INSPECTION OF CHEMICALS AGENTS AND RELATED EQUIPMENT

1.   Quarterly inspections of all chemical agents and related equipment shall be performed and documented by the Emergency Service Unit. A written record of all such inspections shall be maintained which shall include, but need not be limited to:

   a.   The name of the person(s) inspecting the articles;

   b.   The date of inspection;

   c.   The type and quantity of articles stored and inspected; and

   d.   A description of their condition.

2.   No chemical agent products should be used beyond the expiration date, except for training purposes.

3.   All expired chemical agent products shall be separated from current stock and transferred by the Emergency Service Unit for disposition.

4.   All defective chemical agent equipment shall be tagged and immediately separated from active arsenal stock. The facility shall contact the Special Operations Division (S.O.D.) to arrange a transfer of the equipment for disposal.

5.   Equipment in need of repair shall be transferred by the Emergency Service Unit, accompanied with a written memorandum to the S.O.D. Commanding Officer, describing the existing problem.

*Exibit - J*

| 416R | EFFECTIVE DATE **04/27/12** | SUBJECT | |  |
|---|---|---|---|---|
| | **CHEMICAL AGENTS** | | |
| | CLASSIFICATION # **4510R-F** | | | |
| | DISTRIBUTION **D** | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 10 OF 19 PAGES | |

## V.   PROCEDURE

### A.   HAND-HELD AEROSOL

1.   General

   a.   Certified Correction Officers designated by the Commanding Officer of the facility and all certified Captains shall be permitted to use the approved hand-held aerosol dispenser.

   b.   Prior to using the hand-held aerosol dispensers, attempts should be made to resolve the situation by other means, (i.e., interpersonal communication skills, supervisory response, etc.). Further, the subject shall be warned that chemical agents will be utilized if the subject continues his/her misconduct. The "Device" shall be used with the utmost discretion.

   c.   Facilities must develop an approved secure area in the Control Room, to permit the proper storage and accountability of hand-held product. Staff shall not store hand-held aerosol dispensers in their lockers.

   d.   If any member is issued and receives a departmental hand-held dispenser and holster, the following notations shall be made in the designated logbook:

      i.   Name, rank and shield number of each person issued a canister and holster.

      ii.   Date and time the equipment was issued and returned.

      iii.   Identification numbers of each piece of equipment (canister and holster).

   e.   Each facility shall maintain a master list of personnel who are authorized/certified to use hand-held dispensers.

   f.   Hand held units (CS/OC) may be used outdoors.

2.   Authorized Use

The use of a hand-held dispenser is authorized in the following situations:

   a.   To defend oneself.

   b.   To defend another employee, inmate or visitor.

Exbit -K

| 416R | EFFECTIVE DATE 04/27/12 | SUBJECT CHEMICAL AGENTS | |  |
|---|---|---|---|---|
| | CLASSIFICATION # 4510R-F | | | |
| | DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 11 OF 19 PAGES | |

## V.  PROCEDURE (cont.)

    c.   To prevent a serious crime, including inmate disturbances or escapes.

    d.   To maintain the safety and security of the facility.

    e.   To enforce Department rules, facility regulations and court orders where necessary to promote the good order and safety of the facility.

    f.   To take an inmate into custody.

    g.   To prevent serious damage to property.

    h.   To prevent an inmate from harming himself/herself.

    Note:   A hand-held aerosol unit is not as effective against large groups or in large areas.   It is more effective in one-on-one or one-on-two situations, and in small cell areas.

   3.   Prohibited Use

    The use of a hand-held chemical agent is prohibited in the following situations:

    a.   To force an inmate to comply with an officer's verbal orders, except in those situations outlined in the preceding Section V.A.2.;

    b.   To solicit information;

    c.   To discontinue an argument between inmates;

    d.   As a threatening gesture; or

    e.   To punish an inmate.

   4.   Safety Precautions and Use

    a.   Prior to using hand held chemical agents, the subject shall be warned that chemical agents will be utilized if the subject continues his/her misconduct.

*Exbit - L*

| 416R | EFFECTIVE DATE 04/27/12 | SUBJECT CHEMICAL AGENTS |  |
|---|---|---|---|
| | CLASSIFICATION # 4510R-F | | |
| | DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 12 OF 19 PAGES |

## V.   PROCEDURE (cont.)

    b.   Hand-held units, when used, shall be directed at the appropriate area of the subject as follows:

| MAKE AND MODE | AIM |
|---|---|
| i.   Federal Lab. #587 (CS) Dust | Above the head |
| ii   Federal Labs MK-VI OC | Face |
| iii.   Security Equipment Corp. Sabre 5.0 Mk-VI O/C | Face |
| iv.   Security Equipment Corp. Sabre Red Mk-VI O/C | Face |
| v.   Sabre Aerosol Projector MK-9 OC | Face |

        Note:   Do not aim or spray CS agents directly into eyes.

    c.   When using the dust hand-held unit, it shall be directed above the head of the subject.

        Note:   Do not aim or spray CS agents directly into eyes.

    d.   Hand-held units should not be used at a distance of less than three (3) feet.

    e.   Liquid hand-held units have a maximum effective range of twelve (12) to fifteen (15) feet.

    f.   Dust hand-held units have a maximum range of approximately fifteen (15) feet in still air.

    g.   Limit application of the hand-held unit to a single, two (2) second burst. If necessary, a total of three (3), two (2) second bursts can be employed. The Sabre Aerosol Projector MK-9 OC should not be used at a distance of less than six (6) feet. The units have a maximum range of twenty-five (25) feet.  Dispersion directed at an inmate shall be limited to three (3) one-second bursts.

*Exbit ~ m*

| 416R | EFFECTIVE DATE 04/27/12 | SUBJECT CHEMICAL AGENTS |  |
| | CLASSIFICATION # 4510R-F | | |
| | DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 13 OF 19 PAGES |

## V.   PROCEDURE (cont.)

Note:   When the Cell Buster is sprayed under a cell door, the chemical agent shall be deployed for three (3) continuous seconds.  The Cell Buster is only to be used against potential assailants behind cell doors.

Caution: Do not spray subject at a range less than three (3) feet.  Severe eye, skin irritation or other injury may occur.

h.   If the desired results are not achieved, the use of the dust unit is recommended.  However, this is predicated on a supervisor's approval.

i.   Under no circumstances shall OC or CS be used in conjunction with the Electronic Immobilization Shield as noted in Directive #4600, entitled ELECTRONIC IMMOBILIZATION SHIELD, page 3, subsection IV.B.

j.   A controlled avenue of exit must be identified.

Note:    Person(s) exposed to CS or OC must not be left unattended.

5.   Individual Decontamination and Medical Attention

a.   Remove the individual(s) from the contaminated area.

b.   Advise the Individual(s) not to rub his/her eyes. Salves, oil or grease medications or creams (i.e., butter, cold cream, petroleum jelly, lanolin, etc.) should not be applied to contaminated areas on the body.  These applications tend to further entrap the agent causing intense irritation and blistering of the skin.

c.   Do not bandage or cover the affected skin areas.

d.   If possible, bring the individual(s) out into fresh air or use a fan and have him/her face the wind.

e.   Have the individual(s) remove contaminated clothing.  Clothing should be washed or destroyed.

f.   The subject(s) shall shower or wash in cool water.  (Flush contaminated skin areas with large quantities of cool water.)  Calm and reassure subjects that they will receive medical attention and decontamination.

*Exbit -N*

| 416R | EFFECTIVE DATE 04/27/12 | SUBJECT |  |
|------|-------------------------|---------|--|
|  | CLASSIFICATION # 4510R-F | CHEMICAL AGENTS |  |
|  | DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 14 OF 19 PAGES |

## V. PROCEDURE (cont.)

g. After the individual decontamination has been completed, the area supervisor shall ensure that prompt medical attention is given to the individual(s) affected by the dispensing of the chemical agent. This prevents the contamination of the medical environment.

Note: Severe eye and/or skin irritation with CS may occur if hand-held chemical agents are dispensed at a distance less than three (3) feet of the subject. If at any time it is apparent that the chemical agent has been used at a closer range (less than three (3) feet) and has affected an individual's eyes, immediate medical attention shall be obtained for the person in question (Flush with large amounts of cool water).

h. Under no circumstances shall the subject(s) remain in the contaminated area for a period exceeding five (5) minutes after the hand-held aerosol application. In the event the subject(s) refuses to leave the area, other appropriate means shall be employed to remove the subject within the prescribed time period.

6. Whenever A Hand-Held Chemical Agent Is Utilized, The Following Shall Be Complied With:

a. Immediately report the incident to a supervisory officer.

b. A notation of the incident shall be made in the memo-book of the officer/supervisor who dispensed the agent; and countersigned by the investigating supervisor.

c. Record the incident in the area and the Central Control Room logbook.

d. Prepare "Use of Force Reports" (#5004A-D).

e. Ensure all contaminated persons (inmates and staff) receive immediate medical treatment.

f. Obtain all applicable medical reports and evaluations from facility medical personnel.

g. Prepare any other reports and forms as required by Department regulations.

7. Review Of Hand-Held Chemical Agents Utilization (written evaluations)

*Exhibit - O*

| 416R | EFFECTIVE DATE 04/27/12 | SUBJECT | | |
|------|---|---|---|---|
|  | CLASSIFICATION # 4510R-F | CHEMICAL AGENTS | | |
| | DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 15 OF 19 PAGES | |

## V.   PROCEDURE (cont.)

a.   Each incident involving the use of the hand-held chemical agents including accidental discharge, shall be reviewed by the respective Commanding Officer and Deputy Warden for Security.

b.   The Commanding Officer and the Deputy Warden for Security shall review the incident to ascertain whether or not Departmental procedures governing the use of the hand-held chemical agents were adhered to.

c.   Said review shall take place within twenty-four (24) hours or no later than the next business day following the incident.

B.   CHEMICAL AGENTS - OTHER THAN HAND-HELD AEROSOL

1.   General

a.   Whenever chemical agents are to be used in congregate areas, those individuals who request to be removed shall be immediately evacuated unless circumstances preclude this action.

b.   Chemical agents can be extremely dangerous to persons (staff and inmates) known to have heart or respiratory ailments. Every effort shall be made to safeguard these individuals from being exposed to chemical agents.

c.   Prior to using chemical agents (other than hand-held) the facility's ventilation system should be shut down.

d.   The following precautionary measures should be taken prior to entering an area with a concentration of chemical agents:

i.    Contact lenses and eyeglasses should be removed.

ii.   Oil-based makeup or lotions should be removed from exposed skin areas.

iii.  Jewelry should be removed (including watchbands).

iv.   Tight-fitting clothing around the neck, wrist and ankle areas should be loosened but skin should remain covered where possible.

Exbit-p

416R

| | EFFECTIVE DATE 04/27/12 | SUBJECT | CHEMICAL AGENTS |  |
|---|---|---|---|---|
| | CLASSIFICATION # 4510R-F | | | |
| | DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 16 OF 19 PAGES | |

## V.   PROCEDURE (cont.)

Note:   All staff should be aware that some individuals with mental disorders or those under the influence of alcohol or narcotics will be affected by chemical agents. However, such inmates may not show the desired effects.

e.   Precautions shall be taken to insure that chemical agents do not contaminate hospital, clinic and other medical areas.

f.   In any situation where chemical agents are being used, a controlled avenue of exit shall be provided for the inmates and other personnel. All staff in or entering an area where chemical agents have been or are about to be employed must wear a protective mask.

g.   When using chemical agents, all personnel present shall be issued protective masks and must wear them.

h.   Combustion and/or low-toxic smoke chemical agents are designed for use against large groups and in outdoor areas. In a single cell or small room situations, or in cases where it is desirable to limit the size of the affected area, these types of agents should not be employed.

Note:   When selecting a product(s) to use, care must be taken to avoid introducing excessive volumes. Consider the size of the area, number of people involved, ceiling height and, in ounces, weight of the product(s).

2.   Individual Decontamination and Medical Attention

a.   Remove the individual(s) from the contaminated area to fresh air or a fan where possible.

b.   Advise the individual(s) not to rub their eyes. Salves, oil or grease medications or creams (i.e., butter, cold cream, vaseline/petroleum jelly, lanolin, etc.) should not be applied to contaminated areas on the body. These applications tend to further entrap the agent causing intense irritation and blistering of the skin.

c.   Do not bandage or cover the affected skin areas.

Exbit-Q

| 416R | EFFECTIVE DATE 04/27/12 | SUBJECT | | |  |
|---|---|---|---|---|---|
| | CLASSIFICATION # 4510R-F | CHEMICAL AGENTS | | | |
| | DISTRIBUTION D | APPROVED FOR WEB POSTING ☐ YES ☒ NO | PAGE 17 OF 19 PAGES | | |

## V. PROCEDURE (cont.)

d. If possible, bring the individual(s) out into fresh air or stand the individual(s) in front of a fan for approximately three (3) to five (5) minutes. Said individual(s) should face the wind and shake any agent particles from hair and clothing, force their eyes open and allow them to tear. Advise them not to rub their eyes.

e. Have the individual(s) remove contaminated clothing. Clothing should be washed or destroyed.

f. In cases of extreme exposure, the subjects shall shower or wash in cool or lukewarm running water using non-deodorant soap. Showers must have open drains since CS is not soluble in water and will float. When CS has prolonged contact with skin, burns may result.

   Caution: Advise individual(s) not to take baths.

g. Subjects may also be provided with cool water containing a five percent (5%) solution of sodium bicarbonate (baking soda) and instructed to apply to irritated skin areas.

h. The area supervisor shall ensure that prompt medical attention is given to all persons affected by the dispensing of chemical agents

 Note: In the event of severe eye and/or skin irritation occurrences, or any other apparent serious reaction to the chemical agents, all affected subjects shall receive immediate medical attention.

i. Under no circumstances shall an individual remain in the contaminated area for an extended period of time. In the event an individual refuses to leave the area, other appropriate means shall be employed to remove said individual or counter the chemical agents effects via ventilation /decontamination.

3. Physical Plant Decontamination

The command dispersing the chemical agent shall be responsible for effecting all decontamination procedures as follows:

a. All inmates shall be removed from the contaminated area(s).

b. All spent CS casings shall be removed from the affected area(s) and placed in airtight containers.

Exhibit-S

| | EFFECTIVE DATE<br>**04/27/12** | SUBJECT<br>**CHEMICAL AGENTS** | |
|---|---|---|---|
| 416R | CLASSIFICATION #<br>**4510R-F** | | |
| | DISTRIBUTION<br>**D** | APPROVED FOR WEB POSTING<br>☐ YES ☒ NO | PAGE 19 OF<br>19 PAGES |



## VI. REFERENCES

A. Directive #5006R-C, Use of Force, dated 01/31/08.

B. Directive #5000R-A, Reporting Unusual Incidents, dated 11/19/04 (as amended).

C. Directive #4600, Electronic Immobilization Shield, dated 07/09/98.

D. Operations Order 14/07, Pepperball System, dated 8/13/07

E. New York State Penal Law, Article 35 - Defense of Justification, section 35.05, Justification; generally

F. State Commission of Correction, Subtitle AA, Part 7063 - Chemical Agents

Note: In the event that a reference is superseded, the successor document shall apply.

## VII. SUPERSEDES

A. Directive #4510R-E, Chemical Agents, dated 08/22/08.

B. Any other Directive, Operations Order, Teletype, Memorandum, etc, that may be in conflict with the policies and procedures outlined herein.

## VIII. SPECIAL INSTRUCTIONS

A. Within ten (10) calendar days of the effective date of this order, all Commanding Officers shall implement a Command Level Order incorporating the policy and provisions outlined herein.

B. One (1) copy of the command level order shall be forwarded to each respective Supervising Warden.

C. All facility managers and supervisors shall ensure strict enforcement of the policy, guidelines and procedures noted herein.

SHAKUR YOUNG
Din 17R3045
GREENE CORRECTION FACILITY
COXSACKIE, NY 12051-0975



GREENE

CORRECTIONAL FACILITY

NEOPOST
04/12/2018
US POSTAGE $002.18⁰

ZIP 12051
041M11287879



Pro Se
MG

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NY 10007
Clerk of Courts



USM P3
SDNY

**LEGAL MAIL**



CLERK'S OFFICE
S.D.N.Y.