UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------

SHAKUR YOUNG

v

THE CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF CORRECTION COMMISSIONER
JOSEPH PONTE; BUREAU CHIEF OF SECURITY
BRIAN SUPRENANT; WARDEN PRESSLEY RNDC;
CAPTAIN ANJELOVIC #1750, NYCDOC OFFICER
CIELTO #3731, NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION
------------------------------------------

DOCKET No. 18-CV-3316(CM)

AMENDED COMPLAINT

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
12-28-18

1. This is a Civil Rights Lawsuit brought by the Plaintiff against
New York City officials acting under the "Color Of Law" for the
Civil Rights violation involving Excessive Force, 42 U.S.C. § 1997
Civil Rights of Institutional Person Act, Violations of the Universal
Declaration of the Human Rights Article 18, 19 & 25, and violation
of the Eight Amendment as well as State claims for Medical Malpractice
, Gross Negligence, Denial of Immediate Medical Attention and
Treatment and Retaliation for filing grievance and lawsuits. At all
times relevant herein, the Defendants City officials actions "Under
The Color Of Law" and outside the scope of their jursidiction and
authority pursuant to Customs and Policy willfully caused Plaintiff
unlawful damage and in so doing violated clearly, established law, as
those laws apply to Plaintiff protected under Constitution particularly
under Eight and Fourteenth Amendments. Be it known each of the "City
Officials" herein have taken a sworn "Oath Of Office" on regards to
their duties and there for each of their acts under "Color Of State
Law" is in direct violation of their "Oath Of Office" and equates to
Criminal Conspiracy under section 1983.

JURSIDICTION AND VENUE

2. The Plaintiff brings this action pursuant to section 1983, 1985,
1986 and 1988, and invokes the jurisidiction of this Court pursuant to
Title 8 use section 1331, 1332 and 1343(a)(3)(4), and 42 U.S.C.A. §
1983, and the Civil Rights Act 1964 and Constitution of the United
States. At all times relevant, all the Cause of Actions were committed
within the geographical jurisdiction of this court.

3. The Plaintiff also invokes supplemental jurisdiction of this court
over Plaintiff state law claims against the Defendant's for common-law
violations pursuant to 28 U.S.C.A. § 1367.


## PARTIES

4. The Plaintiff SHAKUR YOUNG, is a pretrial detainee at the time of
these events at the ROBERT N. DAVORAN CENTER, 11-11 Hazen Street, East
Elmhurst, New York 11370. Rikers Island.

5. The Defendant THE CITY OF NEW YORK, 100 Church Street, New York, NY
10007-2601. Herein the City Of New York at all times relevant to this
complaint, was and is a municipal corporation for the City of New York
, State of New York, responsible for compensating, enriching and
rewarding and making policies for the Defendant's New York City
Department of corrections commissioner JOSEPH PONTE, Bureau Chief of
security BRIAN SUPRENANT, Warden ADA PRESSLEY RNDC, Captain ANJELOVIC
#1750, NYCDOC officer CIELTO #3731, NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION.

6. The Defendant New York City Department Of Corrections Commissioner
JOSEPH PONTE, New York City Department of Corrections 75-20 Astoria
Boulevard, East Elmhurst, New York 11370. Herein at all times relevant
to this complaint, was acting as a City official employed for the
municipality of the City of New York Department of Corrections,

an official selected by the City of New York in charge of New York City Department Of Corrections, compensated, enriched, rewarded correction rewarded correction officer.

7. The Defendant New York City Department Of Corrections Bureau Chief **BRIAN SUPRENANT**, New York City Department Of Corrections 75-20 Astoria Boulevard, East Elmhurst, New York 11370. Herein at all times relevant to this complaint, was acting as a City official employed for the municipality of the City of New York Department Of Corrections, appointed by New York City Department Of Corrections commissioner Joseph Ponte in his adminstration to Bureau Chief of Security, compensated, enriched, rewarded correction officer.

8. The Defendant Warden **ADA PRESSLEY**, ROBERT N. DAVORAN CENTER, 11-11 Hazen Street, East Elmhurst, New York 11370. Rikers Island. At all times relevant to this complaint was acting as a City official employed for the municipality of the City of New York Department Of Corrections, appointed by New York City Department Of Corrections Commissioner Joseph Ponte to the position of warden of RNDC. A person invested with the power to govern and or control day to day operations at this facilty , compensated, enriched, rewarded correctional officer.

9. The Defendant Captain **ANJELOVIC #1750**, ROBERT N. DAVORAN CENTER, 11-11 Hazen Street, East Elmhurst, New York 11370. Rikers Island. At all times relevant to this complaint was acting as a City official employed for the municipality of the City of New York Department of Corrections, compensated, enriched, rewarded corrections officer.

10. The Defendant New York City Department Of Correction Officer **CIELTO #3731.** At all times relevant to this complaint was acting as a City official employed for the municipality of the city of NYCDOC at RNDC.

FACTS

11. On the 18th Day of September, 2017, at around 10:30am The Plaintiff SHAKUR YOUNG, was in the detainees bathroom in Mod #2, at the RNDC facility on Rikers Island, and a altercation occurred between two detainees.

12. The Plaintiff tried to stop the altercation between the two detainees, and all of a sudden NYCDOC officer CIELTO shield No. 3731 came running into the bathroom and the chemical agent olesresin capsicum at a very close range all over the Plaintiff face, eyes, neck , and chest area. NYCDOC officer also sprayed the two detainees involved in the altercation.

13. The Plaintiff immediately began to feel a extremely hot burning sensations to his face, eyes, neck and chest area.

14. The Plaintiff exited the bathroom and captain ANJELOVIC shield No. 1750, was standing right there.

15. The Plaintiff complained to captain ANJELOVIc shield No 1750, that he needs immediate medical attention because of being sprayed with the chemical agent olesresin capsicum by NYCDOC officer CIELTO shield No. 3731.

16. The Plaintiff aaserts that captain ANJELOVIC shield No. 1750, could clearly see that the plaintiff was in respiratory distress, and ion pain.

17. The Plaintiff asserts that captain ANJELOVIC shield No. 1750, said to the Plaintiff in a angry tone and with profanity laced words to go sit on your fucking bunk now!.

18. The Plaintiff asserts that he tried to comply with captain

ANJELOVIC Shield No. 1750 order and went to his bed area, but the Plaintiff could not remain there because of the intense burning sensations that he was feeling on his face, eyes, neck, and chest area, and the fact that the Plaintiff was vomiting alot by now and had difficulty breathing.

19. The Plaintiff asserts that got up from his bed and ran to the nearest garbage can, which was the one locted by the detainees phones in front of the bathroom.

20. The Plaintiff asserts that capatin ANJELOVIC Shield No. 1750, then ordered another NYCDOC officer to have the detainees placed inside the dayroom until further notice.

21. The Plaintiff asserts that there is a video camera facing the entrance to the bathroom, and that he can be seen on video exiting the bathroom in respiratory distress, vomiting, choking, difficulty breathing, and the Plaintiff conversation begging for medical care to captain ANJELOVIC.Shield No. 1750.

22. The Plaintiff asserts while in the dayroom he still have major trouble breathing, respiratory issues, vomiting alot and in pain.

23. The Plaintiff asserts that while he and many other detainees were place in the dayroom, we all can be seen by the video camera in that room trying to get fresh air from the windows open only partially, but this was a failed attempt because its only but some many windows inside the dayroom and it was just too may detainees.

24. The Plaintiff can also be seen choking, vomiting, and have difficulty breathing inside the dayroom on the video camera.

25. The Plaintiff asserts that shortly afterwards, another NYCDOC

officer came to the dayroom and made a announcement for the lunch time feeding, and that all detainees must exit the dayroom and go to the messhall downstairs to eat.

26. The Plaintiff asserts that he refused to go because he was suffering from from being directly sprayed with the chemical weapon olesresin capsicum, and was in serious need of medical attention.

27. The Plaintiff asserts that he exited the the dayroom and exited the dayroom and went to his bed area to a towel and hygiene equiptment to take a shower because of the intense burning of his skin he was continuing to feel.

28. Plaintiff asserts NYCDOC officers did not informed that he must take a cool shower in order for the chemical agent to be removed from his skin, because the shower water in Mod #2 is extremely hot.

29. The Plaintiff asserts that when he turned on the water on and the hot water hit the affective areas that was sprayed with the chemical agent olesresin capsicum, it made matter extremely worse and the hot water made the chemical agent feel like someone threw gasoline on the Plaintiff and set him on fire.

30. The Plaintiff asserts that he screamed in agony as he quickly try to turn the water off.

31. Thaintiff asserts then he got dress putting the same contaminated facility issued uniform on and exited the bathroom.

32. The Plaintiff exited the bathroom area NYCDOC officer CIELTO shield No. 3731, approached the Plaintiff inside the dorm area.

33. The Plaintiff asserts that NYCDOC Officer CIELTO Shield No. 3731

34. The Plaintiff asserts that NYCDOC officer Cielto #3731 said to

the Plaintiff that he must exit the dorm area and go downstairs to the messhall to eat, and the Plaintiff then shouted at NYCDOC officer CIELTO #3731, and said that I need medical attention, and for him to please contact the clinic.

35. The Plaintiff asserts NYCDOC officer CIELTO #3731, seem hesitant about making the call to the clinic with hope that the Plaintiff would abandon his request to go to medical due to being directly sprayed with the chemical agent by him.

36. Plaintiff asserts that by now his injuries are clearly visible , and that I was in respiratory distress.

37. The Plaintiff exited the dorm area and went and sat down on a chair directly in from of Mod #2 officers control bubble, and demanded to the officer in the control bubble to contact the clinic.

38. The Plaintiff asserts about fifthteen minutes later NYCDOC officer CIELTO #3731 exited the dorm area of Mod #2 and said to the Plaintiff that he would be escorting him to the clinic.

38. When injuries are claimed by the Plaintiff especially when the use of excessive force through the chemical agent olesresin capsicum, the Plaintiff should have been decontaminated and received prompt medical care. There should be no delay in this process. Delays in sending detainee(s) to the clinic in RNDC facility are so common when excessive force through NYCDOC officers misconduct, because correction officers fear of being sued by detainee(s). NYCDOC officers CIELTO #3731, capatain ANJELOVIC #1750 were deliberate indifferent Plaintiff serious medical needs.

39. The Plaintiff asserts that NYCDOC officers CIeELTO #3731,

were aware of the fact that the Plaintiff was seriously in need of
medical attention, and failed to provide access to medical personnel
intentionally delayed such access.

**40.** The Plaintiff asserts that NYCDOC officer CIELTO #3731, captain
ANJELOVIC #1750, did nothing to temper the severity of their forceful
response. This factor brings up the remainder of the NYCDOC officers
Cielto #3731, captain ANJELOVIC #1750 conduct, which amounted to a
continuation and aggravation of the initial force applied to Plainti-
ff after the need for force has ended.

**41.** The Plaintiff asserts that he was finally escorted by NYCDOC
CIELTO #3731 to the clinic.

**42.** The Plaintiff asserts that on the way there NYCDOC officer CIELTO
#3731 tried to talk to the Plaintiff about what happened, and the
Plaintiff said to officer CIELTO #3731, that he had no right to spray
me with the chemical agent olesresin capsicum, that the Plaintiff was
not involved in the altercation, that the Plaintiff was not armed
with any kind of weapon  nor was the Plaintiff a threat to NYCDOC
officers, staff or detainees.

**43.** The Plaintiff asserts that NYCDOC officer CIELTO #3731 gave no
warnings  to the detainees who were involved in the altercation to
stop fighting of force through the chemical agent olesresin capsicum
will be deployed. These announcements must be made before the use of
force through the chemical agent olesresin capsicum can be used, as
well evacuation, decontamination and those detainees affected must
receive prompt medical care.

**44.** The Plaintiff arrived at the clinic and the clinic officer log

him in the computer as well as the log book of the time of arrival
and why the Plaintiff was brought to the clinic.

45. The Plaintiff asserts that the clinic officer then asked officer
CIELTO #3731 for the injury report and officer CIELTO #3731 responded
by saying he did not have one for me. The Clinic officer then stated
to officer CIELTO #3731 that he must fill out one immediately on the
Plaintiff. NYCDOC officer CIELTO #3731 complied and filled out the
injury report.

46. The Clinic officer then told the Plainitff to go have a seat in
the waiting area bullpen until summon to be seen by a doctor.

47. The Plaintiff asserts that he waited for close to four hours in
excruciating pain, respiratory issues and trouble breathing.

48. The Plaintiff asserts that all of a sudden there was an
altecation with several adolescent detainees in the corridor directly
outside the clinic.

49. The Plaintiff asserts that NYCDOC officers security team at RNDC
sprayed the younger detainees with the chemical agent olesresin
capsicum.

50. The Plaintiff asserts that several security team officers were
exposed and were brought to the clinic for treatment. NYCHHC personn-
el in the clinic gave treatment to the NYCDOC officers and one school
teacher who was exposed to olesresin capsicum.

51. Meanwhile, the Plaintiff is sitting in the waiting area bullpen
in pain observing security team officers and a school teacher receiv-
ing treatment for injuries sustained from olesresin capsicum.

52. The Plaintiff asserts that he started to complain to the clinic

officer MONROE. and he stated to the Plaintiff that medical staff
was going to treat NYCDOC officer and personnel first before I can be
seen by a doctor because they're a priority.

53. The Plaintiff started to complain some more to officer Monroe
because he was in pain and trouble breathing, but it fell on deaf
ears because the Plaintiff still have to wait until NYCHHC personnel
treat NYCDOC officer and staff first.

54. The Plaintiff asserts that about hour or so later another situat-
ion occurred. There was a accident with one of the transportation
buses returning from a court trip and the injured detainees were
brought to RNDC clinic, and NYCHHC personnel started to give them
treatment while the Plaintiff still suffering and waiting to be seen
by NYCHHC personnel.

55. The Plaintiff asserts at this point his injuries consisted of
severe irritation possibly burns from the chemical agent on his skin.
Respiratory issues, trouble breathing, severe headach, the Plaintiff
could no longer vomit because there was nothing left in his stomach.

56. The Plaintiff asserts that by now it 2:30/2:45pm, and the Plaint-
iff have been waiting inside the clinic bullpen waiting area and have
not been seen by any NYCHHC personnel.

57. The Plaintiff asserts the clinic captain WAITERS, was making her
rounds in the clinic and as she walk pass waiting area bullpen the
Plaintiff summon her.

58. The Plaintiff asserts that captain WAITERS came over to the
bullpen waiting area and he started to complain to captain WAITERS
about being sprayed with the chemical agent olesresin capsicum, and

that I have been waiting to be seen by a doctor since noon time
12:00pm, and have been denied prompt medical treatment becsuse of
injured NYCDOC security team and school teacher who was place ahead
of me because of ther exposure to olesresin capsicum, and also injur-
ed detainees were brought to the clinic from a transportation bus
accident that occurred on a trip from the court house.

59. Captain WAITERS then said to the Plaintiff, let me see what I can
do, and why you haven't been seen yet.

60. The Plaintiff asserts that finally around 3:45pm he was summon to
be seen by a doctor.

61. The Plaintiff explained what happen to him to the doctor who
who did a cursory examination, and told me to take a shower and get
rid of the contaminated clothering. The Plaintiff then states to the
doctor that he tried to take a shower but the water is too hot and I
think that due to this it made the chemical agent more intense which
made my skin feel like it was on fire.

62. Plaintiff asserts still in a lot of pain he left the clinic and
return to MOD #2 housing unit.

63. The Plaintiff asserts that the following day he filed an grievan-
ce about the following: Being sprayed by NYCDOC officer CIELTO #3731
with the chemical agent olesresin capsicum, The Plaintiff not being
evacuated, from Mod #2 housing unit for about an hour 90 minutes.
The Plaintiff being denied immediate medical attention by NYCDOC
officers and medical (clinic) staff. While waiting in the clinic
for treatment RNDC security team officers  and one school teacher
were brought to the clinic for injuries sustained due to olesresin

capsicum exposure and treatment, and a transportation bus accident
that occurred and the injured detainees were brought RNDC clinic for
treatmnt, thus further preventing the Plaintiff from receiving
treatment for injuries sustained as directive result of being sprayed
with the chemical agent olesresin capsicum.

**64.** The Plaintiff asserts that the grievance coordinator summon the
Plaintiff to her office and then she said to the Plintiff sarcastica-
lly Mr. Young, you wrote a book.

**65.** The grievance coordinator then asked the Plaintiff why did he
write so much on his grievance and the Plaintiff responded by saying
that he's complaining about everything that happened that day to him.

**66.** The Plaintiff asserts that the grievance coordinator then said
to him, from what she read this seems like a medical issues, and that
going to forward my grievance to the clinic and I should be hearing
something from them.

**67.** The Plaintiff asserts that he did'not want to get into a verbal
with the grievance coordinator and her decision to send my grievance
to NYCHHC medical providers which is in charged of providing medical
care to detainees at the Robert N. Davoran facility.

**68.** Plaintiff asserts that his grievance was not only a deliberate
denial of prompt medical treatment, but also excessive force and
abuse by NYCDOC officer CIELTO #3731.

**69.** The Plaintiff asserts that the grievance coordinator has a
reputation of not getting issues resolved, and even NYCDOC officers
at RNDC facility don't worry about any detainees submitting grievanc-
es to her about them!.

70. The Plaintiff asserts that the grievance coordinator failed to informed the him was that Excessive Force and Medical issues are nongrievable issues under the NYCDOC guidelines.

71. The Plaintiff asserts that he can clearly see that the grievance coordinator did not want to dela with the issues prsented on his grievance.

72. The Plaintiff asserts that he never heard anything from NYCHHC about his grievance that was submitted to them by the grievance coordinator. The Plaintiff believes that the grievance coordinator did not forwarded his grievance to NYCHHC personnel.

73. See Exhibit A, a copy of the grievance submitted to the coordinator at RNDC.

74. The Plaintiff repeat, reiterate, and realleged with the same force and effect as if fully set forth here at length, each and every allegation alleged and set forth in paragraph 1-74 of this complaint.

75. As a direct and proximate result of NYCDOC officer CIELTO #3731 brutality and misconduct, excessive force, and deliberate denial of prompt medical treatment by NYCDOC officer CIELTO #3731 / captain ANJELOVIC #1750 / New York City Health and Hospital Corporation personnel at RNDC, as set forth above the Plaintiff has suffered and continues to suffer emotional and psychological pain.

76. At all times pertinent to these allegations, the Plaintiff was unarmed and did'not pose a threat of death or grievous bodily injury to the defendants or detainees.

77. Plaintiff asserts that at no time did NYCDOC officer CIELTO #3731 have probable cause to believe the Plaintiff was involved in the altercation inside MOd #2 housing unit detainees bathroom.

78. The Plaintiff asserts that the failure to ameliorate in a timely fashion the effects of olesresin capsicum spary may be considered excessive force by NYCDOC officers.

79. The Plaintiff asserts that NYCDOC officer intentionally did not comply with jail policy and manufacturer instructions regarding ventilation, decontamination and immediate medical care and treatment in order to inflict unnecessary and wanton pain and suffering.

79. The Plaintiff asserts that NYCHHC personnel knew of, and deliberately disregarded, an excessive risk to the Plaintiff health from delayed treatment. Deliberate indifference claim will arise when 'a medical professional completely denies care although presented with recognizable symptoms which potentially creates a medical emergency.

80. The Plaintiff asserts that NYCDOC officer CIELTO #3731, captain ANJELOVIC #1750, New York City Health and Hospitals Corporation, warden ADA Pressley, and other upper echelon officials were aware of the continuous use of excessive force and brutality by NYCDOC officers.

81. The Plaintiff asserts that the action of NYCDOC officer CIELTO #3731 constitutes unreasonable and excessive force.

82. Upon information and belief, at all times pertinentm the City of New York, NYCDOC commissioner Joseph Ponte, Bureau Chief of Security Brian Suprenant, Warden Ada Pressley RNDC, Captain Anjelovic #1750 permitted and tolerated a pattern and practice of unreasonable use of force by correction officers of the City of New York.

82. Upon information and belief, The City of New York, New York City Department of Corrections commissioner Joseph Ponte, Bureau Chief of Security Brian Suprenant, Warden Ada Pressley RNDC, has maintained a

system of review of corrections officers misconduct so untimely and cursory at to be ineffective and permit, tolerate the abuse and the unreasonable **excessive** use of force by New York City Depatment of Correction officers.

83. The act, omission, systemic flaws, policies and customs of the City of New York cause correction officers of the City of New York to believe that **excessive** and unreasonable use of force would not be aggressively, honestly, and properly investigated, with the forseeable result that correction officers are more likely to use **excessive** or unreasonable force against Plaintiff and other detainees in the near future.

84. The plaintiff has raised a genuine issue of fact regarding whether the DOC and NYCHHC policy of regularly denying detainess prompt ventilation, decontamination, and medical care following olesresin capsicum spray discharged should have put supervisors on notice of misconduct that was sufficiently obvious, flagrant, rampant, and of continued duration to required "supervisors to act".

### COUNT I. VIOLATION OF CONSTITUTIONAL RIGHTS DEFENDANT NEW YORK CITY DEPARTMENT OF CORRECTION OFFICER CIELTO #3731
#### (Claim for Compensatory Damages)

85. Plaintiff incorporates by reference paragraphs 1 through 84.

86. The intentional use of **excessive force** by NYCDOC officer CIELTO #3731, violated the rights of Plaintiff as guaranteed by the Fourth, Fifth, Eight and Fourthteenth Amendments to the United States Constitution, for which Defendant are individually liable.

COUNT II. VIOLATION OF CONSTITUTIONAL RIGHT DEFENDANTS
NEW YORK CITY DEPARTMENT OF CORRECTION OFFICER CIELTO #3731

87. Plaintiff incorporates by reference in paragraphs 1 through 86.

88. The intentional use of **excessive force** through the chemical weapon Olesresin Capsicum, by NYCDOC officer CIELTO #3731, when the plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendants or others, when Defendants had no lawful to use deadly or non deadly **force** against Plaintiff, was done with willful and wanton indifference to and deliberate disregard for constitutional rights of Plaintiff. Plaintiff is thus entitled to exemplary damages.

COUNT III. VIOLATION OF CONSTITUTIONAL RIGHTS DEFENDANTS
NEW YORK CITY DEPARTMENT OF CORRECTIONS OFFICER CIELTO # 3731
(Claim for Compensatory Damages)

89. Plaintiff incorporates by reference in paragraphs 1 through 88.

90. The intentional use of **excessive force** through the chemical weapon Olesresin Capsicum, by NYCDOC officer CIELTO #3731, when the Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendants or others, when Defendants had no lawful authority to use deadly or nondeadly **force** against the Plaintiff was done with actual malice towards PLaintiff and with willful and wanton indifference to and deliberate disregard for the statutory Civil rights of Plaintiff.

COUNT IV. VIOLATION OF CONSTITUTIONAL RIGHTS DEFENDANTS
THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTION COMMISSIONER JOSEPH PONTE, BUREAU CHIEF OF SECURITY BRIAN SUPRENANT , WARDEN ADA PRESSLY RNDC, OFFICER CAPTAIN ANJELOVIC #1750, OFFICER

CIELTO #3731, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION

91. Plaintiff incorporates by reference in paragraphs 1 through 90 .

92. It was the policy and practice of the City of New York to employ certain corrections officers, including New York City Department of Corrections commissioner Joseph Ponte, Bureau Chief of security Brian Suprenant, Warden Ada Pressley RNDC, Captain Anjelovic #1750, officer Cielto #3731.

93. It was the policy and practice of the City of New York to authorized certain correction officers to cover up the use of **excessive force** despite the lack of probable cause to justify the use of **force** through the chemical weapon Olesresin Capsicum. This policy and practice the Robert N. Davoran Center, Rikers Island encourage and caused constitutional violations by corrections officers, including the violations of plaintiff's constitutional rights by defendant's Joseph Ponte, Bureau Chief of Security Brian Suprenant, Wasrden Ada Pressley RNDC, Captain Anjelovic #1750, officer Cielto #3731.

94. It was the policy and practice of the City of New York to authorized certains corrections officers, including Defendant's commissioner Joseph Ponte, Bureau Chief of Security Brian Suprenant, Warden Ada Pressley RNDC, Captain Anjelovic #1750, officer Cielto, #3731, New York City Health and Hospitals Corporation, to deny and prevent prompt medical treatment of detainees injured by corrections at Robert N. Davoran Center RNDC. Also to prevent detained persons in the care custody of the City of New York from receiving prompt care, and to abuse verbally those detained persons who sought to assert these rights. These policies and practice of the City of New

York encourage and caused constitutional violations by New York
City Department of Corrections, including the violations of the
plaintiff"s constitutional rights by Defendant's commissioner Joseph
Ponte, Bureau Chief of Security Brian Suprenant, Warden Ada Pressley
RNDC, Captain Anjelovic #1750, officer Cielto #3731, New York City
Health and Hospitals Corporation.

95. At all pertinent times, Defendants City of New York, Commission-
er Joseph Ponte, Bureau Chief of Security Brain Suprenant, Warden
Ada Pressley RNDC, Captain Anjelovic #1750, and other unknown super-
visors who supervised the officer who unlawfully violated Plaintiff
rights encourage and tolerated the policies and practices. Defendan-
t's City of New York, New York City Department of Corrections Commi-
ssioner Joseph Ponte, Bureau Chief of Security Brain Suprenant,
Warden Ada Pressley RNDC, refused to adequately train, direct, supe-
rvised, or control corrections officers under there command as to
prevent the violations of Plaintiff's constitutional rights.

96. Defendant's New York City Department of Corrections commissioner
Joseph Ponte, Bureau chief of security Brain suprenant, Warden Ada
Pressley RNDC, Captain Anjelovic #1750, officer Cielto #3731, New
York City Health and Hospitals Corporations were acting in the scope
of there employements and pursuant to the policies and practices of
the City of New York. These policies and practices of the City of
New York were enforced by Defendant's Commissioner Joseph Ponte,
Bureau Chief of security Brian suprenant, Warden Ada Pressley RNDC,
Captain Anjelovic #1750, officer Cielto #3731, New York City health
and Hospitals Corporation, and were a moving force, proximate cause
, and or affirmative link behind the conduct causing the Plaintiff

injury. The City of New York, commissioner Joseph Pointe comissioner of New York City Department of Corrections, Bureau Chief of Security Brian Suprenant, Warden Ada Pressley RNDC, Captain Anjelovic #1750, officer Cielto 3731, New York City Health and Hospitals Corporation are therefore liable for the violations of Plaintiff constitutional rights by the Defendants.

COUNT V. CONSPIRACY TO VIOLATE CIVIL RIGHTS DEFENDANTS THE CITY OF NEW YORK, JOSPEH PONTE COMMISSIONER NEW YORK CITY DEPARTMENT OF CORRECTIONS, BRIAN SUPRENANT BUREAU CHIEF OF SECURITY, WARDEN ADA PRESSLEY RNDC, CAPTAIN ANJELOVIC #1750, OFFICER CIELTO #3731, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION

(Claim for Compensatory Damages)

97. Plaintiff incorporates by reference paragraphs 1 through 96.

98. Defendants The City of New York, Joseph Ponte commissioner of New York City Department of Corrections, Brian Suprenant Bureau Chief of Security, Ada Pressley Warden RNDC, Captain Anjelovic #1750, Officer Cielto #3731, New York City Health and Hospitals Corporation conspired to violate Plaintiff statutory Civil rights on violation of 42 U.S.C.A. § 1983, for which Defendant's are individually liable.

COUNT VI. ASSAULT AND BATTERY
DEFENDANTS THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTIONS OFFICER CIELTO #3731

(Claim for Compensatory Damages)

99. Plaintiff incorporates by reference paragraphs 1 throught 98.

100. The verbal abuse, and use of non-deadly force by defendant NYCDOC OFFICER Cielto #3731, when defendant had no lawful authority to

spray the Plaintiff with the chemical weapon Olesresin Capsicum, when
the Plaintiff was unarmed and did not pose a threat of death or
grievous bodily injury to defendant or others, was without justifica-
tion or provocation was excessive, and constitute assault and battery
for which defendant's the City of New York, NYCDOC officer Cielto
#3731, are individually liable.

101. As a proximate result of the assult and battery committed by
defendant NYCDOC officer Cielto #3731, Plaintiff has sustained injur-
ies. These injuries have caused and will continue to cause Plaintiff
great suffering mentally.

COUNT VII. ASSAULT AND BATTERY

DEFENDANT OFFICER CIELTO #3731

NYCDOC

(Claim for Exemplary Damages)

102. Plaintiff incorporates reference paragraphs 1 through 101.

103. The intentional spraying of the chemical weapon Olesresin Capsic-
um, and verbally abuse of Plaintiff by defendant NYCDOC officer
Cielto #3731, when the Plaintiff was unarmed and did not pose a
threat of death or grievous bodily injury to defendant or others,
when defendant did not have no lawful authority to use non-deadly
force against Plaintiff, was done with actual deliberate disregard
for human life and the rights of the plaintiff. Plaintiff is thus
entitled to exemplary damages.

COUNT VIII. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

DEFENDANTS THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT

OF CORRECTIONS OFFICER CIELTO #3731

(Claim for Compensatory Damages)

1.04. Plaintiff incorporates by reference to paragraph 1 through 103.

105. Defendant NYCDOC officer Cielto #3731, intentionally sprayed the chemical weapon Olesresin Capsicum, and verbally abused Plaintiff in a manner that was extreme, outrageous, and unjustified, and caused Plaintiff to suffer physical and emotional distress for which the defendant's the City of New York, NYCDOC officer Cielto #3731, are individually liable.

COUNT IX. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
DEFENDANTS THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT
OF CORRECTIONS OFFICER CIELTO #3731

106. Plaintiff incorporates by reference paragraphs 1 through 105.

107. The intentional use of excessive force through the chemical weapon Olesresin Capsicum, and verbal abuse of Plaintiff by Defendant NYCDOC officer Cielto #3731, were unjustified and done with actual malice and wanton indifference to and deliberate disregard for human life and the rights of Plaintiff. Plaintiff is thus entitled to exemplary damages.

COUNT X. RESPONDEAT SUPERIOR LIABILITY DEFENDANTS
THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTIONS
COMISSIONER JOSEPH PONTE, BUREAU CHIEF OF SECURITY BRIAN SUPRENANT,
WARDEN ADA PRESSLEY RNDC, CAPTAIN ANJELOVIC #1750, NEW YORK CITY
DEPARTMENT OF CORRECTIONS OFFICER CIELTO #3731

(Claim for Compensatory Damages)

108. Plaintiff incorporates by reference paragraphs 1 through 107.

109. At all times pertinent here to, Defendants Commissioner Joseph Ponte, Bureau Chief Security Brian Suprenant, Warden Ada Pressley

RNDC, Captain Anjelovic #1750, NYCDOC officer Cielto #3731, were acting within the scope of their employement as officers of New York City Department of Corrections.

110. The City of New York is liable for compensatory damages under the doctrin of respondeat superior for the intentional torts of Defendants commissioner Joseph Ponte, Bureau Chief Brian Suprenant, Warden Ada Pressley RNDC, Captain Anjelovic #1750, NYCDOC officer Cielto #3731, committed within the scope of their employement.

COUNT XI. RESPONDEAT SUPERIOR LIABILITY DEFENDANTS

THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTIONS COMMISSIONER JOSEPH PONTE, BUREAU CHIEF OF SECURITY BRIAN SUPRENANT , WARDEN ADA PRESSLEY RNDC, CAPTAIN ANJELOVIC #1750, NEW YORK CITY OFFICER CIELTO #3731

(Claim for Exemplary Damages)

111. Plaintiff incorporates by reference paragraphs 1 through 110.

112. The City of New York, through its agents, expressley authorized Defendant's Commissioner Joseph Ponte, Bureau Chief of Security Brian Suprenant, Warden Ada Pressley RNDC, Captain Anjelovic #1750, NYCDOC officer Cielto #3731, to use excessive force; knew, through its agents , that Defendants officers had a propensity for committing intentional torts, using excessive force in the line of duty; and acquiesced in the Defendant's wrongful conduct. Plaintiff is thus entitled to exemplary damages against the City of New York for the malicious conduct of Defendants.

COUNT XII. NEGLIGENT DEFENDANTS THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTIONS COMMISSIONER JOSEPH PONTE, BUREA CHIEF SECURITY BRIAN SUPRENANT, WARDEN ADA

PRESSLEY RNDC, CAPTAIN ANJELOVIC #1750, NYCDOC OFFICER CIELTO #3731

(Claim for Compensatory Damages)

113. Plaintiff incorporates by reference paragraphs 1 through 112.

114. Defendants Commissioner NYCDOC Jospeh Ponte, Bureau Chief of Security Brian Suprenant, Warden Ada Pressley RNDC, Captain Anjelovic #1750, NYCDOC officer Cielto #3731, while acting as agents and employess for the City of New York in their capacity as corrections officers for the City of New York, owed a duty to Plaintiff to perform their correctional duties without the use of excessive force. Defendants use of force upon the plaintiff, when plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to corrections officers or others constitutes negligence for which Defendant's are individually liable.

115. Defendant NYCDOC officer Cielto #3731, use of force upon plaintiff when Defendant had no lawful authority to use force against Plaintiff constitutes negligence for which Defendants are individually liable.

116. As a proximate result of Defendant negligence use of force, plaintiff has sustained injuries and these injuries have caused and will continue to cause Plaintiff pain and suffering mentally.

COUNT XIII. NEGLIGENCE DEFENDANT

THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF

CORRECTIONS OFFICER CIELTO #3731

(Claim for Compensatory Damages)

117. Plaintiff incorporates by reference paragraphs 1 through 116.

118. The negligent use of force upon the plaintiff by Defendant NYCDOC officer Cielto #3731, when the plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendant or

others, and when Defendant had no lawful authority to use force against Plaintiff was done with willfull and wanton indifference to deliberate disregard for human life and the rights of Plaintiff. Plaintiff is thus entitled to exemplary damages.

## COUNT XVI. NEGLIGENT DEFENDANTS

### THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTIONS OFFICER CIELTO #3731

#### (Claim for Compensatory Damages)

119. Plaintiff incorporates by reference paragraphs 1 through 118.

120. At all times of the incident, Defendant NYCDOC officer Cielto #3731, was acting within the scope of his employement as an officer of New York City Deapartment of Corrections for the City of New York.

121. The City of New York is liable for compensatory damages under of respondeat superior for the negligence of Defendant committed within the scope of their employment.

## COUNT XV. NEGLIGENT DEFENDANTS

### THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CORRECTIONS COMMISSIONER JOSEPH PONTE, BRIAN SUPRENANT BUREAU CHIEF OF SECURITY, WARDEN ADA PRESSLEY RNDC, CAPTAIN ANJELOVIC #1750

#### (Claim for Compensatory Damages)

122. Plaintiff incorporates by reference paragraphs 1 through 121.

123. Defendants The City of New York, Joseph Ponte Commissioner of New York City Department of Corrections, Brian Suprenant Bureau Chief of Security, Ada Pressley Warden RNDC, Captain Anjelovic #1750 , failed to train , supervised, and discipline corrections officers,

including the individually named Defendant NYCDOC officer Cielto
#3731, as to prevent the use of excessive force through the chemical
weapon Olesresin Capicum.

124. Defendant's The City of New York, Joseph Ponte Commissioner of
New York City Department of Corrections, Brian Suprenant Bureau
Chief of Security, Ada Pressley Warden RNDC, Captain Anjelovic #1750
, failure to train, supervised, and discipline amounts to deliberate
indifference to the rights of detainees with whom the Defendant
NYCDOC officer Cielto #3731, and the other NYCDOC authorities in
this case comes into contact, including the Plaintiff. It is this
failure that has created and encourage on going use of excessive
force through the chemical weapon Olesresin Capsicum, and various
other forms of brutality by these corrections officers withou fear
of any retribution and or sanctions by their superiors. Plaintiff
sustained injuries and these injuries have and will continue to
cause Plaintiff to suffer mentally as well as physically.

### COUNT XVI. NEGLIGENCE DEFENDANTS

#### THE CITY OF NEW YORK, JOSEPH PONTE COMMISSIONER OF
#### NEW YORK CITY DEPARTMENT OF CORRECTIONS, BRIAN SUPRENANT
#### BUREAU CHIEF OF SECURITY, ADA PRESSLEY WARDEN RNDC,
#### CAPTAIN ANJELOVIC #1750

#### (Claim for Exemplary Damages)

125. Plaintiff incorporates by reference paragraphs 1 through 124.

126. The deficiency in training, supervision, and discipline of New
York city department of corrections officers, including Defendant
NYCDOC officer Cielto #3731, was an actual cause of the constitutio-

nal deprivations and injuries suffered by the Plaintiff.

127. The deficiency in training, supervision, and discipline of New York City Deapartment of Corrections officers represents a deliberate indifference on the part of Defendants to the rights of incarcerated detainees including the Plaintiff. Plaintiff is thus entitled to exemplary damages.

### COUNT XVII. PLAINTIFF AGAINST THE CITY OF NEW YORK FOR MONELL LIABILITY

128. Plaintiff incorporates and reference paragraphs 1 through 127.

129. During all relevant times The City of New York, knowingly, and and with willful and deliberate indifference to the constitutional rights of detainees, maintained and permitted a widespread custom and practice of permitting the occurances of the types of wrongs set forth in the following paragraphs.

130. During all relevant times, The City of New York maintained a widespread custom and practice of its corrections officers of the dangerous, and unconstitutional use of Excessive Force at facilities under NYCDOC control. Plaintiff alleges a pattern of inadequate investigations into complaints of Civil Rights violations , tolerance of officers on prisoner brutality, denial of or deliberate delay of medical care, and a code of silence, of which NYCDOC commissioner Joseph Ponte, Bureau Chief of Security Brian Suprenant, Ada Pressley Warden RNDC, and various other supervisory staff within the NYCDOC are fully aware of and that is so pervasive, and has been tolerated for so long as to rise to the level of official policy. In support of these allegations, The Plaintiff amended complaint cites credible sources of information that can be inferred, including

DOC Commissioner Joseph Ponte's, June 2014 testimony before the New York City Counsel.

News articles documenting the brutality and excessive force by corrections officers. (See Graham Rayman, Rikers Fight Club: The Knockout Punch, Village Voice, April 15,2009), (See Isolde Raftery, 6-year sentence for guard in Rikers Island beatings, N.Y. Times, August 7, 2010.), (See Graham Rahman, Teen Murder at Rikers Jail, Village Voice, Nov. 19, 2008.), (See Benjamin Weiser, Lawsuits suggested pattern of Rikers Guards looking the other way, N.Y. Times, Feb 4, 2009.), (See N.Y. Times 2014 report that found "brutal attacks by corrections officers on inmates" to be common that "the reluctance of DOC to acknowledge the problem and the fact that guards are rarely punished" has contribute to the problem, and which showed the use of force by officers had increased nearly 90% over five years begining in 2009.), (Citing a 2015 New York Times article quoting a DOC statement that "It Takes Time to Undo Decades of Mismangement".), (See CRIPA Investigation of New York City Department of Corrections Jails on Rikers Island August 4, 2014.) The DOJ Report contains the conclusions of an Investigation into "the treatment of adolescent males at RNDC facility. In the DOJ finding letter, the DOJ asserts that during the fiscal year 2013, there were 1,057 injuries among males in 565 reported incidents against inmates/detainees, which brute force is the first impulse rather than the last resort. This report is laced with brutality and misconduct by corrections

Officers. Plaintiff alleges that the DOJ finding letter "concludes with recomendations to address the poor training and lack of accountability among officers." This 79-page bombshell report by the DOJ that list factual determinations how and why excessive force was use by these officers. The DOJ also described the "systemic defficiencies that contribute to, exacerbate and indeed are largely responsible for the excessive and unnecessary use of force DOC staff as including:

Inadequate reporting by staff of the use of force, including false reporting; inadequate investigations into the use of force

Inadequate staff discipline for inappropriate use of force

Inadequate supervision of inmates by staff

Inadequate training both on use of force and on managing adolescents; and general failure by management to address the extraordinary high levels of violence perpetrated against and among the adolescent population.

Further, the DOJ found that

[i]nmates are beaten as a form of punishment, sometimes in apparent retribution for some perceived disrespectful conduct. Correction officers improperly use injurious force in response to refusal to follow orders, verbal taunts, or insults, even when the inmate present no threat to the safety or security of staff or other inmates.

In its investigation, the DOJ "reviewed hundreds of thousands pages

of records from both DOC and the Department of Mental [Hygiene ]
("DOHMH"),"the latter of which provides medical services to inmates
at Rikers. (DOJ Finding Letter2). The DOJ further identified a
sample of "approximately 200 use of force incidents" and interviewed
staff from DOC and the DOHMH on issues related to these and other
incidents including "use of force polices and practice, inmate
supervision, staffing, the use of punitive segregation, medical
treatment of injuries, security, investigations, [and] training."
(ld). The DOJ determined "that a deep-seated culture of violence is
pervasive throughout the adolescent facilities at Rikers, DOC staff
routinely utilize force not as a last resort, but instead as a means
to control the adolescent population and punish disorderly or
disrespectful behavior."
The DOJ concluded that "[t]he [DOC]'s failure to curb these patterns
and practices that place adolescents at ongoing risk of serious
harm consitutes deliberate indifference to the adolescents' safety
while in...custody and violates their constitutional rights." (DOJ
Finding Letters 11).

Further, during all relevant times the City of NY, NYCDOC
commissioner Joseph Ponte, Bureau of Security Chief Brian Suprenant,
Ada Pressley Warden RNDC, failed to train correction officers to:
engage only in reasonable use of force, rather than excessive force.
Where supervisors failure to train amount to deliberate indifference
to the rights of persons with whom his/her subordinates come in
contact, the adequacy of training serves as a basis for § 1983
liablilty. Evidence of defective training listed in the DOJ's 2014
investigative report affirmatively linked to the underlying incident.

This investigative report done on the ROBERT N. DAVORAN CENTER (RNDC)
, where the Plaintiff suffered abuse at the hands of corrections
officers who lacked proper training in the use of force through
the chemical weapon Olesresin Capsicum. The City of New York, NYCDOC
Commissioner Joseph Ponte, Bureau Chief of Security Brian Suprenant,
and Ada Pressley Warden RNDC, has demostrated reckless or callous
indifference to the rights of detainees/inmates. This is not an
isolated incident at RNDC, This is common occurances that has plague
all detention facilities under DOC control on Rikers, and both
houses of detention located in Manhattan and Queens.

See lawsuits of Excessive force and brutality listed below:

Excessive force at RNDC, Nunez v. City of NY, 2013 WL 2149869;
See Tartt v. City of NY, 2014 WL 3702594; See Yashua Plair v. City
of NY, 2011 WL 2150658; See Holland v. City of NY, 2016 WL 363249;
See Kenneth Brown V. New York City Department of Corrections, 2018
WL 2389718; Fountain v. Schriro, 2014 WL 6655542

Excessive Force at facilities under NYCDOC control

See Fountain v. City of NY, 2012 WL 1372148; See West v. City of NY,
2014 WL 4290813; See John Daniels v. City of NY, 2014 WL 325934: See
Edwards v. City of NY, 2015 WL 5052637; Pereyra v. Eaddy, 2015 WL
3953606; White v. City of NY, 2015 WL 4601121; Poulos v. City of NY,
2015 WL 5707496; Mcleod v. City of NY, 2016 WL 3144052; Rodriguez v.
City of NY, 2016 WL 5476003; Jose Guadalupe v. City of NY, WL 675440;
Jose Guadalupe v. City of NY, 2016 WL 3570545; Aquino v. City of NY,
2017 WL 384354; See Aquino v. City of NY, 2017 WL 2223921; Wilson
Calderon, 2017 Wl 3209148; Wilson v. Calderon, 2017 WL 2881153;
Manley v. Grossman, 2017 WL 4326511; Parson v. City of NY, 2017 WL

**Roundtree v. City of NY, 2018 WL 1586472.**

Thes lawsuits above with the inclusion of findings by the Department
of Justice concernig the brutality, excessive force and numerious
constitutional violations that corrections officer committing at RNDC
as well as facilities under DOC control.

These poorly trained officers commit acts of brutality with there
hands on detainees, and all of these poorly trained officers are
given the dangerous chemical weapon and they deploy it at will for
minor verbal taunts and insults. These officers are not adequately
trained in the use of Olesresin Capsicum, there contious failure and
or refusal to follow the directive on the use of this chemical weapon.
NYCDOC commissioner Joseph Ponte, Bureau Chief of Security Brian
Suprenant, and Warden Ada Pressley RNDC, failure to insure the necess-
ary training of corrections officers under there command about how
to use this chemical weapon, decontamination procedures, immediate
medial attention and treatment to those either sprayed or exposed
to Olesresin Capsicum. Such failure by these supervisory officals
reflected reckless or callous indifference to constitutional rights
of detainees. The mere existence of formal regualtions, however,
will not save supervisors from liability if they knew, or should
know that the regulations are routinely violated by corrections
officers under there command. NYCDOC officers cannot insulate munici-
pality from liability where there is evidence of continous blatant
violations of this policy. Constitutional analysis of procedures
does not stop with analysis of the written policy. Whatever the
written policy stated, the procdure that was mandated and required
to be followed by NYCDOC officers are listed in the directive.

Plaintiff alleges that these customs, policies and training described above, were the moving force behind the violations of the Plaintiff's rights. The pervasiveness of staff-inmate violence is the predictable result of defendant'd policies and practices most significantly the defendant's failure to prevent the continuous misuse of force by adequately training officers in the appropriate use of force and their failure to deter misuse of force by adequately investigating and disciplining use of force. Here the underlying constitutional right of the Plaintiff is to be free from the use of excessive force by his jailers. Based on the principals set forth in **Monell v. New York City Department of Social Services**, the City of New York is liable for all the harm done to the Plaintiff as set forth above.

### COUNT XVIII. DENIAL OF MEDICAL TREATMENT DEFENDANTS
### NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, CAPTAIN
### ANJELOVIC #1750, NYCDOC OFFICER CIELTO #3731

**131.** Plaintiff incorporates and reference paragraphs 1 through **130**.

**192.** That at the aforesaid place and time New York City Health and Hospitals Staff, Captain Anjelovice #1750, NYCDOC officer Cielto #3731, were acting within the scope of their employement, as employees of the City of New York.

**133.** The Defendant's Captain Anjelovic #1750, NYCDOC officer Cielto #3731, knew from being informed by the plaintiff, or should have known that the Plaintiff had a serious medical need and was in need of immediate medical care and or medication after being sprayed with the chemical weapon Olesresin Capsicum. Defendant's failed

to take reasonable action to summon medical care. Once the Plaintiff
was finally brought to the clinic in RNDC, the Defendant New York
City Health and Hospitals staff made the Plaintiff sat in agony
waiting to be seen by a physcian for several hours as they attended
to the needs of others who had arrived after the plaintiff. The
delay in the provision of medical treatment was intentional and
reckless. Further, through the Defendant's willful and wanton conduct
, Defendat's where deliberate indifferent to the plaintiff health and
safety.

134. As result of the forgoing, the Defendant's New York City Health
and Hospitals Corporation, Captain Anjelovic #1750, NYCDOC officer
Cielto #3731, deliberately and intentionally failed to promptly
provide the plaintiff which such medical treatment. Plaintiff has
sustained injuries including, but not limited to, physical, mental,
and emotional pain and suffering all to his detriment.

135. The lack of medical care or attention inflicted upon the Plain-
tiff by the Defendant's New York City Health and Hospitals, Captain
Anjelovic #175, NYCDOC officer Cielto #3731, was unnecessary,
unreasonable, and excessive and therefore in violation of Plaintiff's
Eighth, Fourteenth Amendment, as well to be free from Cruel or
Unusual Punishment by New York City Health and Hospitals Staff and
Captain Anjelovic #1750, and NYCDOC officer Cielto #3731.

COUNT XVIIII. PLAINTIFF AGAINST THE CITY OF
NEW YORK MONELL CLAIM MEDICAL

136. Plaintiff incorpotates and reference paragraphs 1 through 135.
137. During all relevant times, The City of New York knowingly and
with willful and deliberate indifference to the constitutional rights

of detainees, maintained and permitted a widespread customs and
practice of permitting the occurrence of the types of wrong set forth
in the following paragraphs.

**136.** During all relevant times, the City of New York, New York
City Health and Hospitals Corporation, New York City Department
of Corrections maintained and permitted a widespread customs and
practice of its employees being deliberately indifferent to the
serious medical need of the detainees of the Robert N. Davoran
Center facility. Plaintiff claims that individual defendant's refusal
to provide him with prompt medical treatment after he was sprayed
by NYCDOC officer Cielto #3731, with the chemical weapon Olesresin
Capsicum. Plaintiff immediately voiced to NYCDOC captain and the
officer who sprayed him with the chemical that he was in extreme pain
, unable to breath and various other injuries, and demanded that
he be brought to the clinic for immediate treatment. To established
a serious medical condition "the alleged deprivation must be suffice-
ntly serious, in the sense that a condition of urgency, one that
may produced death, degeneration, or extreme pain exist". NYCDOC
officer's obstructed their efforts to provide Plaintiff with medical
care and transport him to the clinic at RNDC. Once Plaintiff arrived
at the clinic NYCHHC made the plaintiff wait for several hours
in pain before being seen by a physican. The clinic staff recklessly
failed to act with reasonable care to mitigate the risk that the
condition posed. Even though the defendant NYCHHC clinic staff
knew, or should have known, that the condition possed an excessive
risk to health and safety of the plaintiff. The Plaintiff also

alleges a pattern of of inadequate investigations into complaints of
civil rights violations, denial or deliberate delay of medical care
of which supervisory staff within New York City Health and Hospitals
Corporation, and DOC are aware of and that is so pervasive and has
been tolerated for so long as to rise to the level of official
policy. Plaintiff asserts that there are entrenched cultures of
neglect of medical needs, cover-ups and upper echelon officials
turning a blind eye to misconduct. The Plaintiff also alleges the
persistent and widespread practice of the City of NY municipal
inaction in the face of government documented misconduct through
investigations of which Defendant's were aware, sufficient to state
a claim of municipal liability based on policy and custom. To support
these contentions, the Amended Complaint reference a report issued by
United States Attorney's Office for the Southern District of New York
("DOJ Report") detailing the treatment of adolscent males at DOC
jails on Rikers Island from 2011 through 2013. (See U.S. DEPT OF
JUSTICE, CRIPA Investigation of the New York City Department of
Corrections jails on Rikers Island, at pp. 1-2(2014)). Though Chiefly
concerned with the treatment of inmates between the ages of 16 and 18
, the DOJ Report states that "[the] investigation suggests that the
systemic deficiencies identified ... may exist in equal measure at
other jails on Rikers [Island]." (See DOJ Report at pp. 1-2.) The DOJ
Report makes  note of a separate report issued by the Department of
Health and Mental Hygiene ("DOHMH") in late 2013, which found that
45 inmates reported that DOC staff interfered with their efforts to
seek medical treatment, or otherwise retaliated against them, follow-

ing a use of force incident. The DOJ report explicitly states that
inadequate training is one systemic deficiency contributing to
the excessive force and denial or deliberate delay of medical care
, recomendations in the DOJ Report are largely directed at improving
training programs, indicating many of listed deficiencies correlate
to a failure to properly train DOC personel. (Id.at pp. 53-63.) The
content of the DOJ Report provides support for inferences that of
denial or deliberate delays in the provision of medical care occur
regularly, all of which may in part be attributable to the City's
failure to adequately train NYCHHC staff and DOC personel. (See
2014 WL 12644179 (D.O.J.) FEDERAL BUREAU OF INVESTIGATION (FBI)
RIKERS ISLAND CORRECTIONS OFFICER FOUND GUILTY IN MANHATTAN FEDERAL
COURT OF DELIBERATELY IGNORING URGENT MEDICAL NEEDS OF INMATE WHO
DIED.) (See Also 2014 NEW YORK STATE COMMISSION OF CORRECTIONS
("NYSCOC") REPORT THAT DETAILED THE INADEQUATE MEDICAL SERVICES
AVAILABLE TO RIKERS ISLAND DETAINEES. These lawsuits listed below
support the inference that the denial or deliberate delay of medical
by NYCHHC, CORIZON HEALTH CARE, DOC personel was persistent and
widespread well before the plaintiff incident. (See Kearsey v.
Williams, 2005 WL 2125847); (See West v. City of NY, 2014 WL 4290813)
; (See Jackson v. City of NY, 2016 WL 6779586); (see Rodriguez v.
Corizon Health Care, 2016 WL 3766397); (See Cuffee v. City of NY,
2017 WL 1134768); (See Grimmett v. Corizon Medical Ass, 2017 WL
2274485); (See Davis McCready, 2017 WL 4803918); (See Man Zhang v.
City of NY, 2018 WL 3187343); (See Stewart v. City of NY, 2018 WL
1633819); (See Isaac v. City of NY, 2018 WL 1322196); (See Hernandez

v. City of NY, 2242965); (See Roundtree v. City of NY. 2018 WL.
1586473). Collectively these allegations, taken as true, show the
City's accute awareness of the pervasive denial or deliberate delay
of medical treatment by NYCHHC and DOC personel. This plausibly show
that denial or deliberately delayed medical treatment in DOC facilit-
ies is so pervasive that City's failure to take corrective action
creates and inference of deliberate indifference to inmates constit-
utional rights. It is certainly not always the case that the fact
of series of lawsuits alleging similar claims support Monell claim.
Here, However, the point is one of notice. Civil suits filed prior
to Plaintiff denial or deliberately delayed medical treatment by
NYCHHC and DOC personel are relevant here not because they proved
that such denial or delayed medical treatment prior to the incident
at issue. Furthermore, Plaintiff does not solery rely on these
prior suits to support his Monell claims. These allegations are
buttressed by several government reports detailing the City, NYCHHC
and DOC awareness that denial or deliberately delayed medical treat-
ment was widespread problem.

139. Further, during all relevant times, the City of New York failed
to train New York City Health and Hospitals Corporation and New York
City Department of Corrections personel to properly access after the
use of force by corrections officers a detainee serious medical need
and to seek medical attention for a detainee's serious medical need.
140. Plaintiff alleges that these customs policies, and failure to
train, described aboved were moving force behind the violations of
the Plaintiff's rights. During all relevant times, the law required

that detainees be subjected to due process of the law and not be subject to cruel and unusual punsihment. Based on the principles set forth in Monell v. New York City Department of Social Services, 436 U.S. 658, (1978). The City of New York is liable for all the harm done to the Plaintiff as set forth above.

COUNT XX. PLAINTIFF AGAINST THE CITY OF NEW YORK

IDEMNIFICATION

141. Plaintiff incorporates by reference paragraphs 1 through 140.

142. The City of New York is empowered and directed to pay any judgement for compensatory and exemplary damages and any associated attorney's fees and costs for which an employee of New York City Department of Corrections, New York City Health and Hospitals Corporation, acting within the scope of their employement.

143. In the event that a judgment for compensatory and exemplary damages is entered against Defendants NYCDOC commissioner Joseph Ponte, Bureau Chief of Security Brian Suprenant, Ada Pressley warden RNDC, Captain Anjelovic #1750, officer Cielto #3731, New York City Health and Hospitals Corporation. The City of New York must pay the judgment as well as the associated attorney fee and costs.

WHEREFORE, Plaintiff respectfully request that this honorable court grants the following relief:

A. Declare that NYCDOC officer Cielto #3731, use of force on the Plaintiff was unnecessary, unreasonable, and excessive. The misconduct described was undertaken with malice and willful wanton , was sufficiently serious and that officer Cielto #3731, acted intentionally and recklessly failed to act with reasonable care. This is

a violation of the Plaintiff's constitutional rights 8,14, amendment's, and not be subjected to Cruel and Unusual Punishment, as well as State Law rights,

B. Declare that Captain Anjelovic #1750, Officer Cielto #3731, intentionally delayed in the necessary medical care after the Plaintiff was sprayed with the chemical weapon Olesresin Capsicum, amounting in effect to a form of punishment,Based on serious medical need both defendant's was deliberate indifferent to Plaintiff's health and safety. Defendant's Anjelovic #1750, Officer Cielto #3731 Cruel and Unusual Punishment and lack of care and medical response the Plaintiff's constitutional rights were violated under 8, 14 Amendments.

C. Declare NYCDOC Commissioner Joseph Ponte, Bureau Chief of Security Brian Suprenant, Warden Ada Pressley RNDC, allowed the use of excessive force at the hands of corrections officers at RNDC, and throughout facilities under DOC control. These supervisory Defendant's failure to intervene and permitted a widespread customs and practice of permitting the continuous occurrences of these types of wrongs that conduct has become a traditional method of carrying out policy. Here the underlying constitutional right of the Plaintiff is to be free from the use of excessive force by his jailers.

D. Declare that the City of New York, NYCDOC Commissioner Joseph Ponte, Bureau Chief of Security Brian Suprenant, Warden Ada Pressley RNDC, during all relevant times maintained a widespread custom and practice and deliberate indifferent to the constitutional rights of detainees. The dangerous unconstitutional use of excessive force at all facilities under NYCDOC control, and a pattern of of

of inadequate investigations into complaints of civil rights violat-
ions, tolerance of officers on detainees/inmate brutality and a
code of silence, of which NYCDOC commissioner Joseph Ponte, Bureau
Chief òf Security Brian Suprenant, Warden Ada Pressley RNDC, and
various other supervisory staff within the NYCDOC are fully aware
of and that is so pervasive, and has been tolerated for so long
as to rise to the level of official policy.

E. Declare that New York City Health and Hospitals Corporation,
conduct violated Plaintiff rights by intentionally delayed him
from receiving treatment from injuries caused by excessive force
through the chemical weapon Olesresin Capsicum. The alleged depriva-
tion must be sufficiently serious, in the sense that a condition
of urgency, one that may produce death, degeneration, or extreme
pain exist. The NYCHHC clinic staff recklessly failed to act with
reasonable care to mitigate the risk that the condition pose. Even
though the Defendant NYCHHC clinic staff, knew or should have known,
that the condition possed and excessive risk to health and safety
of the Plaintiff, and subjecting the Plaintiff to Cruel and Unusual
Punishment, and in violation of the U.S. Const. 8, 14 Amendments.

F. Declare The City of New York, New York City Health and Hospitals
Corporation maintained and permitted widespread custom and practice
of its employees being deliberate indifferent to the serious medical
needs of detainees in the care and custody of the City. NYCHHC
pattern of inadequate investigations into complaints of civil rights
violations, denail and deliberate delay of medical care of which
the City of NY, and supervisory staff within NYCHHC are well aware

of and so pervasive and has been tolerated for so long as to rise

to the level of official policy.

G. Issue an preliminary injunction seeking an order requiring the

City of New York to create and implement new policies to enforce

the constitutional rights under 42 U.S.C. § 1997 A CRIPA.

H. Award the Plaintiff damages in the following amounts :

1. $10,000,000.00 Compensatory damages in favor of Plaintiff.

2. 6,000,000.00 Exemplary damages in favor of Plaintiff.

3. Costs of this action, including reasonable attorney fees to

the Plaintiff; and

4. such other and further relief as this court may deem appropriate.

Dated: 3rd Day of December, 2018

SHAKUR YOUNG
DIN: 17R3045
GREENE-CORRECTIONAL FACILITY
PO BOX 975
COXSACKIE, NY 12051-0975

## DEMAND FOR JURY TRIAL

Pursuant to RULE 38 of the Federal Rules of Civil Procedure,

Plaintiff demands trial by jury.

December 3, 2018

SHAKUR YOUNG

UNITED STATES DICTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------
SHAKUR YOUNG

                    v                          **DOCKET NO. 18-CV-3316(CM)**

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION COMMISSIONER
JOSEPH PONTE, BUREAU CHIEF OF SECURITY
BRIAN SUPRENANT, WARDEN ADA PRESSLEY
RNDC, CAPTAIN ANJELOVIC #1750, NYCDOC
OFFICER CIELTO #3731, NEW YORK CITY
HEALTH AND HOSPITALS CORPORATION
-----------------------------------------

### CERTIFICATE OF SERVICE

I certify that I am more than 18 years of age and that on

December   , 2018, I served a copy of Amended Complaint on the

following parties in this matter:

ZACHARY W. CARTER
CORPORATION COUNSEL OF THE CITY OF NEW YORK
ATTORNEY FOR DEFENDANT CITY OF NEW YORK
100 CHURCH STREET, RM. 3-209
NEW YORK, NEW YORK 10007

**Mode of Service**
U.S. POSTAL BOX
GREENE CORRECTIONAL FACILITY

I certify under penalty of perjury that the forgoing is true

and correct.

Dated: December 5, 2018

SHAKUR YOUNG
DIN: 17R3045
GREENE CORRECTIONAL FACILITY
PO BOX 975
COXSACKIE, NY 12051-0975

OFFENDER CORRESPONDENCE PROGRAM

NAME: Shakur Young

DIN: 17R3045



Printed on Recycled Paper

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 PEARL STREET
NEW YORK, NY 10007-1312
PRO SE INTAKE UNIT

USM
SDNY LEGAL MAIL

TIONAL FACILITY

EW YORK 12051-0975

AKUR YOUNG          DIN: 17R3045

NEOPOST
12/06/2018

ZIP 12051
041M11287878

32C